**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Robert W. Bright,

          Plaintiff,

   v.

Gallia County, Ohio and the
Board of Commissioners of
Gallia County, Ohio, et al.

          Defendants.

Case No. 2:12-cv-800

Judge Graham

Magistrate Judge Deavers

<u>OPINION AND ORDER</u>

This matter is before the court on a motion to dismiss filed by defendant Judge David Dean Evans (doc. 21).[1]  Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted and Rule 12(b)(1) for lack of subject matter jurisdiction.

**I.    Factual Background**

This action arises from plaintiff Robert Bright's termination from his position as a public defender in Gallia County, Ohio.  Doc. 18 ¶ 1.  Plaintiff was terminated fom his employment with defendant Gallia County Criminal Defense Corporation ("the Criminal Defense Corporation") after Judge David Dean Evans, sole Judge of the Court of Common Pleas of Gallia County, Ohio, removed him from each of more than seventy felony cases in which Bright represented indigent criminal defendants.  Doc. 18 ¶¶ 1, 26, 27.  Plaintiff's first amended complaint brings five causes of action against Judge Evans, the Corporation, the Gallia County Public Defender Commission

---

[1] Also pending before the court are motions to dismiss filed by defendants Gallia County Criminal Defense Corporation (doc. 30), the Gallia County Public Defender Commission (doc. 28), and the Gallia County Board of Commissioners (doc. 20).

("the Public Defender Commission"), and the Gallia County Board of Commissioners ("the Board of Commissioners").  Plaintiff's first cause of action under 42 U.S.C. § 1983 alleges that each defendant, under color of state law, violated plaintiff's First Amendment rights and his procedural due process, substantive due process, and equal protection rights under the Fourteenth Amendment. Doc. 18 ¶ 47.  Plaintiff's second and third causes of action allege that Judge Evans tortiously interfered with plaintiff's contractual and business relationships with the Criminal Defense Corporation.  Doc. 18 ¶¶ 48-51.  Plaintiff's fourth cause of action alleges that the Criminal Defense Corporation breached his employment contract.  Doc. 18 ¶ 52.  Plaintiff's fifth cause of action alleges that Judge Evans invaded his privacy by publishing private facts.  Doc. 18 ¶ 53.

Plaintiff's troubles began during the course of his criminal defense representation of Ricky L. Gleason before Judge Evans in the Gallia County Court of Common Pleas.  At the time, plaintiff was employed as a public defender by the Criminal Defense Corporation.  Doc. 18 ¶ 10.  The Criminal Defense Corporation is a nonprofit corporation with which the defendants Board of Commissioners and Public Defender Commission have contracted to employ attorneys to provide legal services to indigent individuals in Gallia County.  Doc. 18 ¶¶ 7, 10.  According to plaintiff, the contract between the Board of Commissioners, the Public Defender Commission, and the Criminal Defense Corporation, and Ohio law require that individual public defenders be assigned to cases independent of any involvement by the court, yet Judge Evans frequently makes decisions regarding the assignment of counsel in specific criminal defense cases.  Doc. 18 ¶ 13; see Ohio Admin. Code 120-1-10.

In the course of plaintiff's representation of Mr. Gleason, plaintiff "negotiated a plea with the prosecutor and a plea hearing was scheduled."  Doc. 18 ¶ 19.  At the scheduled plea hearing on

July 25, 2011, Mr. Gleason had second thoughts about the negotiated plea.  Doc. 18 ¶ 20.  Mr. Gleason was hesitant to accept the plea because he had not realized until the morning of the plea hearing that he would go directly from the plea hearing to prison–he would not be able to go home first to collect personal items and see family members before spending years in prison.  Doc. 18-2 at 2.  Plaintiff advised Mr. Gleason to go ahead with the plea anyway, but Mr. Gleason declined.  Doc. 18 ¶ 20.  Plaintiff informed Judge Evans that his client did not wish to proceed with the plea and Judge Evans set the case for trial.  Doc. 18 ¶ 21.  "Less than a minute afterwards, Mr. G[leason] again reconsidered and expressed his desire to proceed with the plea.  Mr. Bright informed the Judge, but Judge Evans would not allow the change of plea," Doc. 18 ¶ 21, saying "No, we're not going to play games."  Doc. 18-2 at 3.  Two days later, on July 27, 2011, Judge Evans moved the trial date from September 12, 2011 to August 15, 2011.  On July 28, plaintiff "met with Judge Evans and the Prosecuting Attorney (who continued to approve of the plea deal) in Judge Evans's chambers to try to convince him to accept the plea, but Judge Evans refused."  Doc. 18 ¶ 22.

On August 3, 2011, plaintiff submitted a formal motion for the court to accept Mr. Gleason's plea agreement.  In that motion, plaintiff described the plea hearing, including his client's reason for deciding not to proceed with his plea agreement and then deciding again to go through with it.  Doc. 18-2 at 2.  The motion describes the judge's reaction:

> The Court's curt statement alleging that games were being played was made directly to Defense Counsel and was in response to Counsel's mere statement that the Defendant would like to go forward with the plea change hearing and accept the plea agreement which the Defendant had already signed.
> Defendant's Counsel was not in any way playing games with the Court.  Further, the Defendant was not in any way playing games with the Court.  The Defendant was legitimately conflicted as a result of his surprise at the fact that he was going to be sent to prison immediately after the hearing, and the Defendant was not expecting that until right before the hearing.  At no point after signing the plea agreement did the Defendant ever want to go to trial and always desired to accept the

terms of the guilty plea–he just didn't want to have to go to prison that day.

. . .

The fact that the Defendant was conflicted and having difficulty with the decision to go to prison that very morning did briefly inconvenience the Court, and the Defendant has apologized for that in his statement attached to this motion.

Doc. 18-2 at 3.

Plaintiff's motion then sets forth a legal argument that Judge Evans erred by declining to

allow Mr. Gleason to accept the plea:

At the very end of the hearing, the Court stated that it would have difficulty accepting the Defendant's plea because the Defendant had changed his mind and the court could not know whether or not the Defendant was voluntarily, knowingly and intelligently entering the plea.

This argument by the Court is without basis in law or fact, given the uncontrovertible fact that the Court did not ask a single question of the Defendant during the plea change hearing.  It is not possible for the Court to know whether or not the Defendant was voluntarily, knowingly and intelligently entering a plea without inquiring of the Defendant.  The Defendant's conflicted state at the hearing was not caused by the terms of the plea agreement, but rather, by the fact that the Defendant was going to be going to prison much sooner than he had expected and would not be permitted to go home before he was sent to prison.

Doc. 18-2 at 4.  Mr. Gleason's motion to the Court of Common Pleas proceeds to discuss an Ohio

case that he argues supports allowing him to proceed with his plea.  The motion also attempts to

allay Judge Evans's concern that Mr. Gleason wanted to go home before going to prison so that he

could abscond.  Doc. 18-2 at 7-8.

In addition the issue of Judge Evans's decision not to accept Mr. Gleason's plea, the motion

also discusses Judge Evans's practice of setting "drop dead" dates after which the court will not

accept plea agreements.  Plaintiff criticized this policy in a section of the motion labeled "The

Court's Arbitrary Blanket Policies/Practices."  Doc. 18-2 at 8.  Because this section appears to be

central to the dispute between plaintiff and Judge Evans, it is worth quoting at length here:

It is ironic that the Court has before it a Defendant who is willing to accept

4

a guilty plea, and the Court has thus far chosen to require the expenditure of significant amounts of unnecessary time in preparation for trial by the Prosecuting Attorney, Defense Counsel, the Court's personnel, twenty-one (21) witnesses on the Prosecutor's witness list, and possibly other persons–as well as calling a jury who will all be significantly inconvenienced for two to three days by having to sit on the jury in this case–even though both parties wish to submit a negotiated plea agreement to which the victim has consented.

. . .

It appears that the Court wishes to teach the Defendant and/or Defendant's Counsel a lesson.  Given that the Defendant is currently being held on a bond he cannot afford to pay and, therefore the Defendant cannot go home before he is sent to prison as he had wished, it is the Defendant and Defendant's Counsel's position that the Defendant has learned a lesson from this situation. . . .

. . .

The Court's position on this matter and the matter of the "drop dead date" constitutes an abuse of discretion because the Court's position and attitude is unreasonable and/or arbitrary and/or unconscionable.

. . .

As noted above, the "drop dead date" in this case is August 15, 2011–two and one half (2 ½) weeks from the date of the conference held in Judge's chambers on July 28, 2011.  Even though the "drop dead date" in this case has not yet passed, the Court is unwilling to accept this Defendant's plea–apparently only because the Defendant inconvenienced the court for a few minutes as a result of his shock and surprise at being informed he was going to prison immediately.

It is notable that various Courts across the State of Ohio–including the 4th District Court of Appeals–as well as Federal Courts, have held that such categorical "drop dead dates" and other, similar categorical policies by a Trial Court are an abuse of discretion by the Trial Court.

Doc. 18-2 at 9-10.  The motion proceeds to discuss and quote a handful of cases and argues that they

demonstrate that Judge Evans should have accepted Mr. Gleason's plea.

The motion argues that three more of Judge Evans's policies are arbitrary and prejudice

criminal defendants.  First, it argues that the Court impermissibly "categorically refuses Alford/no

contest pleas . . . [and that] such a categorical refusal is impermissible under various federal and

Ohio Court of Appeal cases."  Doc. 18-2 n. 5.  Second, the motion argues that Judge Evans may have

adopted inappropriate sentencing practices:

[T]he Court apparently sentences all or virtually all Defendants convicted at trial to

a maximum sentence.  If true, such a policy would appear to be non-compliant with the public policy of the State of Ohio as noted in <u>State v. Hood</u> (2001), Not Reported in N.E.2d, 2001 WL 1479242 (Ohio App. 4 Dist.), 2001-Ohio-2620, and several other cases which can be made available to the Court for review upon request.  Surely not every Gallia County Defendant convicted at trial can be one of the "most deserving offenders" in the State of Ohio.  But those are issues to be considered on another day.

Doc. 18-2 n. 5.  Third and finally, the motion opines that

> [i]n Defense Counsel's admittedly limited experience with this Court (and further based on Defense Counsel's knowledge gained from other attorneys who have practiced in this Court for a longer period of time as well as conversations with the Judge), this Court has a "one strike and you're out" policy on community control violations by which every person found to have violated the terms of their community control is sentenced to a prison term.  At their initial sentencing on the crime for which they were indicted, every Defendant being sentenced to community control is informed that they WILL be sentenced to prison for a community control violation and that if the Defendant appears in front of the Court on a community control violation, the Court will take that as an indication that the Defendant wants to or has chosen to go to prison.
>
> As, in those cases, the Court is making such a determination prior to any community control violation ever being committed, the Court appears to be pre-sentencing community control violations and not considering the necessary factors and making a determination that the penalty for the community control violation is commensurate with the offense committed.  The Court appears to therefore not be in compliance with the requirements found in [eight listed Ohio Court of Appeals Decisions.]
>
> The Court appears to be making arbitrary rules in two (2) different situations which are not permissible under the holdings of the Appeals Court cases cited above.  Similarly, the Defendant asserts that the Court's refusal to accept the Defendant's plea change in this matter is arbitrary and/or unreasonable based on a review of the relevant case law.

Doc. 18-2 at 16-17.

Upon receiving the motion submitted by plaintiff on behalf of Mr. Gleason, Judge Evans took a number of actions.  First, "Judge Evans contacted the Office of Disciplinary Counsel of the Supreme Court of Ohio . . . and filed a grievance against Mr. Bright . . . .  No probable cause was found for disciplinary action against the Plaintiff and the Office of Disciplinary counsel closed its

investigation without filing any complaint against Mr. Bright." Doc. 18 ¶¶ 25-25. Next, "[o]n August 8, 2011, Judge Evans filed a public journal entry in which he declared that Mr. Bright's motion, although not rising to the level of misconduct or contempt, had created a conflict with the Court and ordered that Mr. Bright be removed from the case of Mr. G[leason]." Doc. 18 ¶ 26. Finally, Judge Evans took similar actions, removing the plaintiff from other cases: "Judge Evans removed Mr. Bright from *every other action* pending before him–more than seventy felony cases, citing the same conflict and effectively preventing Mr. Bright from performing his duties as a public defender and from practicing law in the Gallia County Common Pleas Court, where Judge Evans was the sole judge. At no time did Judge Evans recuse himself from Mr. Bright's cases. Rather, he terminated the right of Mr. Bright to appear on behalf of the criminal defendants in all of those cases." Doc. 18 ¶¶ 27-28. In the journal entries removing plaintiff from the representation of more than seventy clients, Judge Evans referred to the inquiry he had filed with the disciplinary council, an action that plaintiff alleges violated both his right to privacy and the Supreme Court Rules for the Government of the Bar of Ohio. Doc. 18 ¶ 29. One of the entries reads as follows:

> NOW COMES THE COURT AND ORDERS THAT MICHAEL L. BARR BE SUBSTITUTED FOR COUNSEL FOR THE DEFENDANT. ATTORNEY ROBERT W. BRIGHT IS RELIEVED OF FURTHER OBLIGATION DUE TO THE CONFLICT HE HAS CREATED WITH THE COURT AND AS DESCRIBED IN THE CASE OF STATE OF OHIO VS. RICKY L GLEASON CASE NO. 11CR4, TO WHICH REFERENCE IS HERE MADE, AND FURTHER DUE THE COURTS'S INQUIRY TO THE OFFICE OF DISCIPLINARY COUNSEL, THE SUPREME COURT OF OHIO REGARDING MR. BRIGHT'S CONDUCT. FURTHER, THE COURT FINDS IT IS NOT FEASIBLE/PRACTICABLE TO REQUEST THE OHIO SUPREME COURT TO ASSIGN A VISITING JUDGE TO EACH OF THE APPROXIMATE FIFTY TO SEVENTY CASES CURRENTLY HANDLED BY MR. BRIGHT, DUE TO FINANCIAL BURDEN TO GALLIA COUNTY JUDICIAL ECONOMY, SCHEDULING OF THE COURT, THE CONSTITUTIONAL RIGHTS OF THE DEFENDANT, AND THE CONSTRAINTS/REQUIREMENTS OF A SPEEDY TRIAL GUARANTEED TO THE DEFENDANT. THE COURT FINDS THE SIMPLEST SOLUTION TO THIS

CREATED CONFLICT IS TO APPOINT NEW COUNSEL FOR THE
DEFENDANT. . . .

Journal Entry Substituting Attorney, State of Ohio v. Adam D. Boggess, 11CR000022 (Gallia Cty.

Ct. of Common Pl., Aug. 9, 2011).

The removal of plaintiff from each of his felony criminal cases created other negative

consequences for the plaintiff. Plaintiff argues that each of the other defendants should have

protected him from Judge Evans's actions and their consequences, but they did not. Doc. 18 ¶ 31.

"On September 7, 2011, without a hearing or other due process, Defendant [Criminal Defense

Corporation] terminated Mr. Bright's employment as a public Defender because he could not

practice before Judge Evans." Doc. 18 ¶ 32. Ultimately, once plaintiff was removed from the case,

Judge Evans accepted the disputed plea from plaintiff's former client, Mr. Gleason. Doc. 18 ¶ 33.

## II.    Standards of Review

### a. 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When

considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court

must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint

in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the

complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly,

550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is

entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

b. 12(b)(1)

Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir.2004); Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir.1990).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir.1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Ritchie, 15 F.3d at 598; Moir, 895 F.2d at 269. Here, defendants are making a facial attack on plaintiffs' complaint.

**III.    Analysis**

Defendant Judge Evans argues that the claims against him must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) because this Court lacks jurisdiction under the Rooker-Feldman doctrine, because he is entitled to absolute immunity, and because plaintiff's allegations fail to state a claim on which relief may be granted. Doc. 21 at 3. Judge Evans's arguments that the claims against him must be dismissed pursuant to the Rooker-Feldman doctrine and absolute immunity both stem from the fact that plaintiff's factual allegations related to actions he took while acting as a

Judge in the Gallia County Court of Common Pleas.

Rooker-Feldman

The Rooker-Feldman doctrine prevents district courts from engaging in collateral or appellate review of state-court judgments:

> "[A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme Court of the United States].  Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction.  Plaintiffs in Rooker[ v. Fidelity Trust Co., 263 U.S. 413 (1923)] and [District of Columbia Court of Appeals v. ]Feldman[, 460 U.S. 462 (1983)] had litigated and lost in state court. Their federal complaints . . . essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments.  We declared such suits out of bounds, i.e., properly dismissed for want of subject-matter jurisdiction."

Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84 (2005).  As defendant Judge Evans argues, the Court lacks jurisdiction to alter or review judgments of the Gallia County Court of Common Pleas.  Plaintiff does not ask the Court to do so.  Instead, plaintiff seeks two types of relief against Judge Evans, money damages and an injunction preventing "Defendants from interfering with Plaintiff's right to practice law in Gallia County . . . ."  Doc. 18 at 11.[2]  Money damages awarded against a judge do not  implicate the Rooker-Feldman doctrine.  Regarding an injunction, this Court may not issue an injunction that alters judgments of Ohio Courts.  Though the Rooker-Feldman doctrine may limit the type of relief this Court can provide, it does not require dismissal of any of plaintiff's claims.

Judicial Immunity

Defendant Judge Evans next argues that plaintiff's claims for monetary damages must be dismissed because judges enjoy absolute immunity from suits for money damages that arise from

---

[2]Plaintiff also seeks reinstatement, but since Judge Evans was not his employer, the potential for reinstatement is not relevant to Judge Evans's motion to dismiss.

their judicial acts.  See Barnes v. Winchell, 105 F.3d 1111, 1115-16 (6th Cir. 1997).  "The doctrine of judicial immunity is justified 'by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'"  Id. at 1115 (quoting Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435 (1993).  Judicial Immunity protects "a sweeping range of judicial actions."  Id.  The Supreme Court has established two situations in which judicial immunity does not apply:

> First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

The "judicial acts" protected by absolute judicial immunity are broadly defined.  Whether an action taken by a judge is taken in a judicial capacity "turns on two factors: (1) looking to the nature of the act itself, whether the act is a 'function normally performed by a judge'; and (2) regarding the expectations of the parties, whether the parties 'dealt with the judge in his judicial capacity.' . . . . [E]ven if a particular act is not a function normally performed by a judge, we are directed to 'look to the particular act's relation to a general function normally performed by a judge.'"  Barnes, 105 F.3d at 1116 (quoting Mireles v. Waco, 502 U.S. 9, 12-13 (1991)).

In his complaint, plaintiff identifies two actions taken by Judge Evans that he alleges are "wrongful conduct."  Doc. 18 at 8.  First, "Judge Evans wrongfully removed Mr. Bright from all cases pending before him, in effect disciplining him as an attorney for conduct unrelated to cases pending before him, which is a power reserved only to the supreme Court."  Doc. 18 ¶ 34.  By removing him from his active cases, plaintiff alleges that Judge Evans deprived him of his livelihood and interfered with his contractual and business relationships.  Doc. 18 ¶¶ 35, 36.  Second, "Judge

12

Evans knowingly disclosed the private and confidential grievance he had filed against Mr. Bright, damaging Mr. Bright's reputation with his clients and within the legal community.  Doc. 18 ¶ 27. Each of these actions falls under the broad description of judicial acts.

Addressing conflicts of interest between the Court, attorneys, and their clients is one aspect of a judge's job.  Removing an attorney from representing a client is one of the tools that judges at times use to resolve conflicts between the Court, attorneys, and their clients.  Whether Judge Evans's actions were appropriate is not relevant to the fact that when he removed plaintiff, he acted in a judicial capacity.

Similarly, when Judge Evans filed a grievance against plaintiff, he engaged in a judicial act. The Ohio Code of Judicial Conduct requires judges who have "knowledge that a lawyer has committed a violation of the Ohio Rules of Professional Conduct shall report the violation to a tribunal or other authority empowered to investigate or act upon the violation."  Ohio Code of Judicial Conduct, Cannon 3(D)(2).  That the Office of Disciplinary Counsel ultimately decided that Judge Evans's grievance lacked merit does not change the fact that filing such a report against an attorney is the type of action that judges are sometimes required to do.  Nor is disclosing the grievance on public docket entries a nonjudicial act.  Even if the information about the grievance was not relevant or if Judge Evans included it in the docket out of malice towards plaintiff, making a docket entry is nonetheless a judicial act.

Plaintiff argues that even if his allegations against Judge Evans implicate judicial acts, defendant is not entitled to absolute judicial immunity because his actions were completely outside of his jurisdiction.  Plaintiff's complaint describes actions that could be construed as having the purpose and effect not of managing and overseeing specific conflicts within Judge Evans's

courtroom, but of disciplining the plaintiff as an attorney and preventing him from pursuing the practice of law in Gallia County, as well as selecting the attorney who will serve as public defender in individual cases.  Plaintiff argues that "[t]he power to discipline lawyers and effectively disbar them from practicing in a county" belongs solely to the Ohio Supreme Court, not common pleas judges.  Doc. 24 at 8.  The Ohio Supreme Court has confirmed this limitation on the Jurisdiction of the lower courts of the State of Ohio.

In State ex rel. Buck v. Maloney, 809 N.E.2d 20, 21 (2004), the Ohio Supreme Court considered the case of two attorneys who had come into conflict with a probate judge.  The judge found that the attorneys had "hindered, delayed, and obstructed the administration of several estates . . . ."  Id. (internal quotation marks omitted).  The judge then issued an order that the attorneys be removed from each case in which they served as counsel before the probate court, and barred them from serving as counsel of record in any future cases before the Court.  Id.  One of the attorneys sought a writ of prohibition from the Ohio Supreme Court, preventing the judge from barring him from practicing law before the probate court.  Id.  The Court concluded that "after construing the material factual allegations of [the attorney's] complaint and all reasonable inferences therefrom in his favor, [the attorney] . . . . may ultimately be able to establish that [the Judge] patently and unambiguously lacked jurisdiction to bar him from future probate proceedings."  Id. at 23.  The Court based this conclusion on its own broad and exclusive jurisdiction to supervise the Ohio bar:

> Article IV of the Ohio Constitution grants this court general supervisory power over the courts of Ohio, and we have "guarded our general supervisory power over the court system from encroachment by the lower courts."  State v. Steffen (1994), 70 Ohio St.3d 399, 409, 639 N.E.2d 67.

Maloney, 809 N.E.2d at 22.  The Court considered an earlier, similar case, Melling v. Stralka, 465 N.E.2d 857 (Ohio 1984), in which it "held that the judge had lacked authority to issue the order

14

[prohibiting some individuals from representing criminal defendants] because it was, in effect, a Disciplinary Rule limiting the ability of certain attorneys to practice law before the court and Disciplinary Rules were within the exclusive jurisdiction of this Court . . . ." Maloney, 809 N.E.2d at 22. The Court in Maloney emphasized part of the Melling Court's opinion, in which it held that "[t]o permit each of the trial and appellate courts to establish rules that generally limit the ability of attorneys to practice their profession, or that impose specific disciplinary standards upon the attorneys of this state, certainly would frustrate the purpose behind the Supreme Court's constitutionally authorized governance of the bar." Melling, 465 N.E.2d at 859-60; see Maloney, 809 N.E.2d at 22 (quoting Melling). In Maloney, the Supreme Court of Ohio characterized a lower court's supervision and discipline of members of the bar as "the type of usurpation of jurisdiction by an inferior court which necessitates relief in prohibition." 809 N.E.2d at 22. This United States District Court lacks the power of prohibition, but is called upon here to consider whether defendant Judge Evans disciplined plaintiff as an attorney in the clear absence of jurisdiction.

Taking the allegations in plaintiff's complaint as true, the Court finds that Judge Evans's actions served to discipline plaintiff as an attorney and to limit his practice of law in the clear absence of jurisdiction. Plaintiff alleges that "Judge Evans removed Mr. Bright from *every other action* pending before him–more than seventy felony cases, citing the same conflict and effectively preventing Mr. Bright from performing his duties as a public defender and from practicing law in the Gallia County Common Pleas Court, where Judge Evans was the sole judge." Doc. 18 ¶ 27. Had Judge Evans simply removed plaintiff from the defense of Mr. Gleason following the filing of the motion to accept Mr. Gleason's plea agreement, that removal alone could fall within the rubric of control of the courtroom, rather than discipline and control of the bar. However, plaintiff's

15

allegation that Judge Evans removed him from every other acction pending in Gallia County in which he appeared as counsel describes a de facto disbarment from practicing law in Gallia County–an action outside Judge Evans's jurisdiction, because of the Supreme Court of Ohio's exclusive jurisdiction to govern the bar.

The record entries by which defendant Judge Evans removed plaintiff from the unrelated cases justify removal based upon "THE CONFLICT HE HAS CREATED WITH THE COURT AND AS DESCRIBED IN THE CASE OF STATE OF OHIO VS. RICKY L GLEASON . . . ." Nothing in the Gleason case describes that conflict. Nor is it clear on the present record what, if any, conflict plaintiff had with the court other than his criticism of Judge Evans's courtroom policies. Judge Evans's entries removing Mr. Bright further justifies removal based on "THE COURTS'S INQUIRY TO THE OFFICE OF DISCIPLINARY COUNSEL."   That inquiry is not before the Court. It is possible that discovery will produce evidence that supports or undercuts the premise that Judge Evans's actions were disciplinary in nature and outside his jurisdiction. On the present record, plaintiff's allegations state claims for monetary damages against Judge Evans that are not barred by judicial immunity.

Defendant Judge Evans presents a number of cases in which courts have applied judicial immunity in a wide range of situations. Because none of these cases involve a situation like the one at hand, they do not support his claim of judicial immunity. Defendant relies on Bradley v. Fisher, 80 U.S. 335 (1872), for the proposition that because Judge Evans had jurisdiction to hear criminal cases, he did not act in the complete absence of jurisdiction when he removed plaintiff from more than seventy criminal cases. In Bradley, the plaintiff was an attorney who represented John Suratt in his trial for the murder of President Abraham Lincoln. 80 U.S. at 336. During the course of the

16

trial, the plaintiff had accosted the presiding judge in the courtroom "charging the judge with having offered him . . . a series of insults from the bench . . . [and] threatened the judge with personal chastisement." Id. at 337.  Following the trial, the judge "ordered that [the attorney's] name be stricken from the roll of attorneys practicing in this court." Id.  The Court described the strict requirements of an act in absence of jurisdiction that would circumvent a claim of judicial immunity:

> A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter.  Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.  But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

Id. at 351-52.  The Bradley Court ultimately held that the judge was immune because his actions were within the scope of his jurisdiction.  The defendant judge "possessed the power to strike the name of the plaintiff from its rolls as a practicing attorney." Id. at 354.  The present case is plainly distinguishable because the governance of the bar has substantially changed in the past 150 years and in Ohio only the Supreme Court has the power to strike an attorney from the rolls of those entitled to practice law in the courts of Ohio.

Nor does a more recent case cited by defendant Judge Evans support his claim that he acted within his jurisdiction.  In Stump v. Sparkman, 435 U.S. 349 (1978), the United States Supreme Court considered a claim for judicial immunity made by an Indiana county judge who had ordered the sterilization of a petitioner's minor daughter, based on the mother's claim that the daughter was "somewhat retarded."  435 U.S. at 351.  When the daughter subsequently discovered the nature of the procedure that had been performed without her understanding, she brought suit against many

people involved, including the judge.  Id. at 353-54.  The Court held that the judge was immune to suit because the judge had very broad jurisdiction over "all cases at law and in equity whatsoever" including "all . . . causes, matters and proceedings where exclusive jurisdiction thereof is not conferred by law upon some other court, board or officer."  Id. at 357 (quoting the Indiana Code). In addition, the judge had jurisdiction to order sterilization in some situations (though the sterilization at issue was not such a situation).  Id. at 358.  The Court  held that "neither the procedural errors [the judge] may have committed nor the lack of a specific statute authorizing his approval of the petition in question rendered him liable in damages for the consequences of his actions."  Id. at 359-60.  Here, there is no statute granting Ohio common pleas judges the power to restrict the legal practice of lawyers who appear before them, instead, there is a clear denial of such jurisdiction in favor of exclusive jurisdiction in the Ohio Supreme Court.

Finally, Judge Evans argues that he "did not disbar Mr. Bright or formally discipline him as the Supreme Court of Ohio can.  Rather the judge issued individual orders removing Mr. Bright as appointed counsel relative to specific cases pending before him.  The orders were judicial orders (only a judge could issue such an order) and the judge was acting within his jurisdiction at the time he issued the orders."  Doc. 27 at 5.  Plaintiff alleges, however, that Judge Evans's orders removed him from "every other action pending before him . . . effectively preventing Mr. Bright from performing his duties as public defender and from practicing law in the Gallia County Common Pleas Court . . . ."  Doc. 18 ¶ 27.  Moreover, the orders cite grounds for removal which presumably would apply not only to all pending cases in which plaintiff appeared as counsel, but to any cases he might file in the future until the unspecified "conflict . . . with the court" was somehow resolved. While Judge Evans may have jurisdiction to remove counsel from an individual case based on

actions taken in or related to that case, a blanket removal from all cases based on actions in a single case is an act of discipline or supervision of the bar.  Thus, plaintiff has pleaded sufficient facts to show that Judge Evans acted entirely outside of the jurisdiction of an Ohio Common Pleas Court Judge.  Ohio Courts have made this distinction clear.  For example, in a remarkably similar case, State, ex rel. Jones v. Stokes, 551 N.E.2d 220 (Ohio Ct. App. 1989), the director of the Legal Aid Society of Cleveland and an attorney for that agency sought a writ of prohibition preventing a common pleas court from following through on an order that the attorney not appear before two judges of the court in current or future cases.  Id. at 221-22.  The two judges had sent a letter to the director in which they identified an alleged violation of the Ohio Code of Professional Responsibility on the part of the attorney, and ordered the director "to not assign [the attorney] to either of the courtrooms over which we preside."  Id. at 221-22.  The director did not alter the attorney's assignments, and when she appeared in one of her existing cases, the common pleas court refused to allow her to appear.  The appeals court held that the common pleas judges had acted in the absence of jurisdiction by seeking to discipline the attorney for ethics violations:

> [T]he "orders" which are the subject of this controversy did not occur during particular proceedings.  Rather, they were clearly intended to affect all proceedings before respondents and did not occur in any particular proceeding.
>
> The . . . letter by [the judges] articulates their judgment that [the attorney] had previously violated the Code of Professional Responsibility.  As a consequence of this *prior* "transgression," respondents considered it necessary to impose a sanction on [the attorney] and attempted to compel the assistance of [the director] in implementing that sanction.
>
> Certainly, this broad sanction goes beyond disqualification or mere regulation of the conduct of counsel in a particular proceeding.  Respondents have imposed a continuing restriction on [the attorney's] ability to practice law in their two courtrooms.  This restriction differs only by degree from the sanctions imposed through the grievance procedures which are supervised by the Supreme Court of Ohio.  Yet, the Supreme Court's "jurisdiction over the discipline of attorneys . . . is exclusive and absolute." . . . As a consequence, the conduct of [the judges] which gave rise to this action in prohibition is the type of usurpation of jurisdiction by an

19

inferior court which necessitates relief in prohibition.

Id. at 222-23 (quoting Smith v. Kates, 348 N.E.2d 320, 322 (1976)).  The Ohio Court of Appeals's logic applies directly to this case.  Judge Evans's order goes beyond an individual proceeding in which any ethical transgression may have occurred.  It is "clearly intended to affect all proceedings before" Judge Evans.  Id.  As in Stokes, "this broad sanction goes beyond disqualification or mere regulation of the conduct of counsel in a particular proceeding," and is therefor a clear usurpation of jurisdiction.  For the reasons stated above, on the facts pleaded in the complaint, defendant Judge Evans would not be entitled to judicial immunity.

To be clear, the Court here holds that plaintiff has plead sufficient facts to defeat defendant's claim of judicial immunity.  Subsequent development of the record may demonstrate that judicial immunity may or may not be applicable.

Failure to State a Claim on Which Relief May be Granted

Finally, defendant Judge Evans argues that each of plaintiff's claims against him must be dismissed pursuant to Rule 12(b)(6) because plaintiff has failed to state a claim on which relief may be granted.

Defendant argues that plaintiff cannot prevail in his first claim under Section 1983 because he has not plead facts that would support the conclusion that he was deprived of a federal right.  Doc. 21 at 14.  Defendant argues that plaintiff's federal rights cannot be violated by Judge Evans's actions because "[a]n incorrect decision by the Ohio court does not constitute a deprivation of due process of law that the federal courts must redress."  Doc. 21 at 14 (quoting Agg v. Flanagan, 855 F.2d 336, 339 6th Cir. 1998).  As discussed above, any allegation that Judge Evans's actions were legally incorrect is beyond the jurisdiction of this Court to address.  The Court does not and may not reach

that question, and plaintiff's claims do not rest on the legal propriety of Judge Evans's order. Instead, plaintiff alleges that Judge Evans's orders were taken in the absence of all jurisdiction and that they violated his First and Fourteenth Amendment rights.  Plaintiff's complaint alleges facts to support the conclusion that defendant, acting under color of state law, deprived him of federal rights.

Defendant argues that plaintiff's second and third claims for intentional interference with a contract and with a business relationship must be dismissed because each tort requires improper interference.  Defendant's argument that plaintiff has not alleged *improper* interference again boils down to the claim that defendant's actions were within his jurisdiction: "Ohio law is clear that courts have inherent authority and power to regulate the practice before it . . . ."  They do, but as discussed above, plaintiff's allegations support the conclusion that defendant's actions went much further, and that he acted in the absence of all jurisdiction.

Finally, defendant argues that plaintiff's fifth claim, for invasion of privacy, must be dismissed because "[t]here is no statute that makes a disciplinary grievance private or which makes its disclosure a violation of the law."  Doc. 21 at 16.  This may be the case, but as plaintiff argues, violation of an underlying statute is not necessary to state a claim for publication of private facts. Instead, plaintiff must allege facts that would support a conclusion that defendant publicized private facts that would be "highly offensive and objectionable to a reasonable person of ordinary sensibilities," that the publication was intentional, and that "the matter publicized must not be a legitimate concern to the public." Killilea v. Sears, Roebuck and Co., 499 N.E.2d 1291, 1294-95 (Ohio Ct. App. 1985).  Plaintiff's alleges that defendant intentionally publicized a disciplinary grievance that he made against the plaintiff.  Though the Ohio Rules for the Government of the Bar do not form the basis of the claim, Rule V, § 11(E) establishes a policy that complaints be private

until they are found to have probable cause.  This policy supports plaintiff's claim that the grievance publicized by defendant was private, and that its publication could be found to be offensive and objectionable.

## V.      Conclusion

Based on the foregoing reasons, defendant Judge Evans's motion to dismiss (doc. 21) is DENIED.   Defendant Judge Evans's motion to stay discovery (doc. 40) pending this order is DENIED as moot.

IT IS SO ORDERED.


S/ James L  Graham
James L. Graham
UNITED STATES DISTRICT JUDGE

Date: April 2, 2013