**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Robert W. Bright,

    Plaintiff,

v.

Gallia County, Ohio and the
Board of Commissioners of
Gallia County, Ohio, et al.

    Defendants.

Case No. 2:12-cv-800

Judge Graham

Magistrate Judge Deavers

OPINION AND ORDER

This matter is before the Court following an order in which the Court denied defendant Gallia County Criminal Defense Corporation's motion to dismiss, but expressed uncertainty that plaintiff had stated a claim against the Criminal Defense Corporation on which relief may be granted. Doc. 44. The Court ordered additional briefing on the issue of "whether plaintiff's complaint includes allegations that would make it plausible that the Criminal Defense Corporation has deprived him of a federal right." Doc. 44 at 6. Having given the parties notice of and the opportunity to respond to a potential deficiency in plaintiff's complaint against the Criminal Defense Corporation, the Court dismisses plaintiff's complaint against the Corporation for failing to state a claim on which relief may be granted.

**I.    Factual Background**

The recitation of facts below largely replicates the overview of the facts presented in a prior order. See doc. 43 at 1-8. This action arises from plaintiff Robert Bright's termination from his position as a public defender in Gallia County, Ohio. Doc. 18 ¶ 1. Plaintiff was terminated from his employment with defendant Gallia County Criminal Defense Corporation ("the Criminal Defense

Corporation") after Judge David Dean Evans, sole Judge of the Court of Common Pleas of Gallia County, Ohio, removed him from each of more than seventy felony cases in which Bright represented indigent criminal defendants.  Doc. 18 ¶¶ 1, 26, 27.  Plaintiff's first amended complaint brings five causes of action against Judge Evans, the Corporation, the Gallia County Public Defender Commission ("the Public Defender Commission"), and the Gallia County Board of Commissioners ("the Board of Commissioners").  Plaintiff's first cause of action under 42 U.S.C. § 1983 alleges that each defendant, under color of state law, violated plaintiff's First Amendment rights and his procedural due process, substantive due process, and equal protection rights under the Fourteenth Amendment.  Doc. 18 ¶ 47.  Plaintiff's second and third causes of action allege that Judge Evans tortiously interfered with plaintiff's contractual and business relationships with the Criminal Defense Corporation.  Doc. 18 ¶¶ 48-51.  Plaintiff's fourth cause of action alleges that the Criminal Defense Corporation breached his employment contract.  Doc. 18 ¶ 52.  Plaintiff's fifth cause of action alleges that Judge Evans invaded his privacy by publishing private facts.  Doc. 18 ¶ 53.

Plaintiff's troubles began during the course of his criminal defense representation of Ricky L. Gleason before Judge Evans in the Gallia County Court of Common Pleas.  At the time, plaintiff was employed as a public defender by the Criminal Defense Corporation.  Doc. 18 ¶ 10.  The Criminal Defense Corporation is a nonprofit corporation with which the defendants Board of Commissioners and Public Defender Commission have contracted to employ attorneys to provide legal services to indigent criminal defendants in Gallia County.  Doc. 18 ¶¶ 7, 10.  According to plaintiff, the contract between the Board of Commissioners, the Public Defender Commission, and the Criminal Defense Corporation, and Ohio law require that individual public defenders be assigned to cases independent of any involvement by the court, yet Judge Evans frequently makes decisions

2

regarding the assignment of counsel in specific criminal defense cases.  Doc. 18 ¶ 13; see Ohio Admin. Code 120-1-10.

In the course of plaintiff's representation of Mr. Gleason, plaintiff "negotiated a plea with the prosecutor and a plea hearing was scheduled."  Doc. 18 ¶ 19.  At the scheduled plea hearing on July 25, 2011, Mr. Gleason had second thoughts about the negotiated plea.  Doc. 18 ¶ 20.  Mr. Gleason was hesitant to accept the plea because he had not realized until the morning of the plea hearing that he would go directly from the plea hearing to prison–he would not be able to go home first to collect personal items and see family members before spending years in prison.  Doc. 18-2 at 2.  Plaintiff advised Mr. Gleason to go ahead with the plea anyway, but Mr. Gleason declined.  Doc. 18 ¶ 20.  Plaintiff informed Judge Evans that his client did not wish to proceed with the plea and Judge Evans set the case for trial.  Doc. 18 ¶ 21.  "Less than a minute afterwards, Mr. G[leason] again reconsidered and expressed his desire to proceed with the plea. Mr. Bright informed the Judge, but Judge Evans would not allow the change of plea,"  Doc. 18 ¶ 21, and said "No, we're not going to play games."  Doc. 18-2 at 3.  Two days later, on July 27, 2011, Judge Evans moved the trial date from September 12, 2011 to August 15, 2011.  On July 28, plaintiff "met with Judge Evans and the Prosecuting Attorney (who continued to approve of the plea deal) in Judge Evans's chambers to try to convince him to accept the plea, but Judge Evans refused."  Doc. 18 ¶ 22.

On August 3, 2011, plaintiff submitted a formal motion for the court to accept Mr. Gleason's plea agreement.  In that motion, plaintiff described the plea hearing, including his client's reason for deciding not to proceed with his plea agreement and then deciding again to go through with it.  Doc. 18-2 at 2.  The motion described the judge's reaction:

> The Court's curt statement alleging that games were being played was made directly to Defense Counsel and was in response to Counsel's mere statement that the

3

> Defendant would like to go forward with the plea change hearing and accept the plea agreement which the Defendant had already signed.
>
> Defendant's Counsel was not in any way playing games with the Court. Further, the Defendant was not in any way playing games with the Court. The Defendant was legitimately conflicted as a result of his surprise at the fact that he was going to be sent to prison immediately after the hearing, and the Defendant was not expecting that until right before the hearing. At no point after signing the plea agreement did the Defendant ever want to go to trial and always desired to accept the terms of the guilty plea–he just didn't want to have to go to prison that day.
> . . .
> The fact that the Defendant was conflicted and having difficulty with the decision to go to prison that very morning did briefly inconvenience the Court, and the Defendant has apologized for that in his statement attached to this motion.

Doc. 18-2 at 3.

Plaintiff's motion then set forth a legal argument that Judge Evans erred by declining to allow Mr. Gleason to accept the plea:

> At the very end of the hearing, the Court stated that it would have difficulty accepting the Defendant's plea because the Defendant had changed his mind and the court could not know whether or not the Defendant was voluntarily, knowingly and intelligently entering the plea.
> This argument by the Court is without basis in law or fact, given the uncontrovertible fact that the Court did not ask a single question of the Defendant during the plea change hearing. It is not possible for the Court to know whether or not the Defendant was voluntarily, knowingly and intelligently entering a plea without inquiring of the Defendant. The Defendant's conflicted state at the hearing was not caused by the terms of the plea agreement, but rather, by the fact that the Defendant was going to be going to prison much sooner than he had expected and would not be permitted to go home before he was sent to prison.

Doc. 18-2 at 4. Mr. Gleason's motion to the Court of Common Pleas proceeded to discuss an Ohio case that he argued supports allowing him to proceed with his plea. The motion also attempted to allay Judge Evans's concern that Mr. Gleason wanted to go home before going to prison so that he could abscond. Doc. 18-2 at 7-8.

In addition to the issue of Judge Evans's decision not to accept Mr. Gleason's plea, the motion also discussed Judge Evans's practice of setting "drop dead" dates after which the court will

4

not accept plea agreements.  Plaintiff criticized this policy in a section of the motion labeled "The Court's Arbitrary Blanket Policies/Practices."  Doc. 18-2 at 8.  Because this section appears to be central to the dispute between plaintiff and Judge Evans, it is worth quoting at length here:

> It is ironic that the Court has before it a Defendant who is willing to accept a guilty plea, and the Court has thus far chosen to require the expenditure of significant amounts of unnecessary time in preparation for trial by the Prosecuting Attorney, Defense Counsel, the Court's personnel, twenty-one (21) witnesses on the Prosecutor's witness list, and possibly other persons–as well as calling a jury who will all be significantly inconvenienced for two to three days by having to sit on the jury in this case–even though both parties wish to submit a negotiated plea agreement to which the victim has consented.
> . . .
> It appears that the Court wishes to teach the Defendant and/or Defendant's Counsel a lesson.  Given that the Defendant is currently being held on a bond he cannot afford to pay and, therefore the Defendant cannot go home before he is sent to prison as he had wished, it is the Defendant and Defendant's Counsel's position that the Defendant has learned a lesson from this situation. . . .
> . . .
> The Court's position on this matter and the matter of the "drop dead date" constitutes an abuse of discretion because the Court's position and attitude is unreasonable and/or arbitrary and/or unconscionable.
> . . .
> As noted above, the "drop dead date" in this case is August 15, 2011–two and one half (2 ½) weeks from the date of the conference held in Judge's chambers on July 28, 2011.  Even though the "drop dead date" in this case has not yet passed, the Court is unwilling to accept this Defendant's plea–apparently only because the Defendant inconvenienced the court for a few minutes as a result of his shock and surprise at being informed he was going to prison immediately.
> It is notable that various Courts across the State of Ohio–including the 4th District Court of Appeals–as well as Federal Courts, have held that such categorical "drop dead dates" and other, similar categorical policies by a Trial Court are an abuse of discretion by the Trial Court.

Doc. 18-2 at 9-10.  The motion proceeded to discuss and quote a handful of cases and argued that they demonstrate that Judge Evans should have accepted Mr. Gleason's plea.

The motion argued that three more of Judge Evans's policies are arbitrary and prejudice criminal defendants.  First, it argued that the Court impermissibly "categorically refuses Alford/no

5

contest pleas . . . [and that] such a categorical refusal is impermissible under various federal and Ohio Court of Appeal cases." Doc. 18-2 n. 5. Second, the motion argued that Judge Evans may have adopted inappropriate sentencing practices:

> [T]he Court apparently sentences all or virtually all Defendants convicted at trial to a maximum sentence. If true, such a policy would appear to be non-compliant with the public policy of the State of Ohio as noted in State v. Hood (2001), Not Reported in N.E.2d, 2001 WL 1479242 (Ohio App. 4 Dist.), 2001-Ohio-2620, and several other cases which can be made available to the Court for review upon request. Surely not every Gallia County Defendant convicted at trial can be one of the "most deserving offenders" in the State of Ohio. But those are issues to be considered on another day.

Doc. 18-2 n. 5. Third and finally, the motion opined that

> [i]n Defense Counsel's admittedly limited experience with this Court (and further based on Defense Counsel's knowledge gained from other attorneys who have practiced in this Court for a longer period of time as well as conversations with the Judge), this Court has a "one strike and you're out" policy on community control violations by which every person found to have violated the terms of their community control is sentenced to a prison term. At their initial sentencing on the crime for which they were indicted, every Defendant being sentenced to community control is informed that they WILL be sentenced to prison for a community control violation and that if the Defendant appears in front of the Court on a community control violation, the Court will take that as an indication that the Defendant wants to or has chosen to go to prison.
> As, in those cases, the Court is making such a determination prior to any community control violation ever being committed, the Court appears to be pre-sentencing community control violations and not considering the necessary factors and making a determination that the penalty for the community control violation is commensurate with the offense committed. The Court appears to therefore not be in compliance with the requirements found in [eight listed Ohio Court of Appeals Decisions.]
> The Court appears to be making arbitrary rules in two (2) different situations which are not permissible under the holdings of the Appeals Court cases cited above. Similarly, the Defendant asserts that the Court's refusal to accept the Defendant's plea change in this matter is arbitrary and/or unreasonable based on a review of the relevant case law.

Doc. 18-2 at 16-17.

Upon receiving the motion submitted by plaintiff on behalf of Mr. Gleason, Judge Evans took

a number of actions.  First, "Judge Evans contacted the Office of Disciplinary Counsel of the Supreme Court of Ohio . . . and filed a grievance against Mr. Bright . . . .  No probable cause was found for disciplinary action against the Plaintiff and the Office of Disciplinary counsel closed its investigation without filing any complaint against Mr. Bright."  Doc. 18 ¶¶ 25-25.  Next, "[o]n August 8, 2011, Judge Evans filed a public journal entry in which he declared that Mr. Bright's motion, although not rising to the level of misconduct or contempt, had created a conflict with the Court and ordered that Mr. Bright be removed from the case of Mr. G[leason]."  Doc. 18 ¶ 26.  Finally, Judge Evans took similar actions, removing the plaintiff from other cases: "Judge Evans removed Mr. Bright from *every other action* pending before him–more than seventy felony cases, citing the same conflict and effectively preventing Mr. Bright from performing his duties as a public defender and from practicing law in the Gallia County Common Pleas Court, where Judge Evans was the sole judge.  At no time did Judge Evans recuse himself from Mr. Bright's cases.  Rather, he terminated the right of Mr. Bright to appear on behalf of the criminal defendants in all of those cases."  Doc. 18 ¶¶ 27-28.  In the journal entries removing plaintiff from the representation of more than seventy clients, Judge Evans referred to the inquiry he had filed with the disciplinary council, an action that plaintiff alleges violated both his right to privacy and the Supreme Court Rules for the Government of the Bar of Ohio.  Doc. 18 ¶ 29.  One of the entries reads as follows:

> NOW COMES THE COURT AND ORDERS THAT MICHAEL L. BARR BE SUBSTITUTED FOR COUNSEL FOR THE DEFENDANT.  ATTORNEY ROBERT W. BRIGHT IS RELIEVED OF FURTHER OBLIGATION DUE TO THE CONFLICT HE HAS CREATED WITH THE COURT AND AS DESCRIBED IN THE CASE OF STATE OF OHIO VS. RICKY L GLEASON CASE NO. 11CR4, TO WHICH REFERENCE IS HERE MADE, AND FURTHER DUE [TO] THE COURTS'S INQUIRY TO THE OFFICE OF DISCIPLINARY COUNSEL, THE SUPREME COURT OF OHIO REGARDING MR. BRIGHT'S CONDUCT.  FURTHER, THE COURT FINDS IT IS NOT FEASIBLE/PRACTICABLE TO REQUEST THE OHIO SUPREME COURT TO ASSIGN A VISITING JUDGE TO

> EACH OF THE APPROXIMATE FIFTY TO SEVENTY CASES CURRENTLY HANDLED BY MR. BRIGHT, DUE TO FINANCIAL BURDEN TO GALLIA COUNTY JUDICIAL ECONOMY, SCHEDULING OF THE COURT, THE CONSTITUTIONAL RIGHTS OF THE DEFENDANT, AND THE CONSTRAINTS/REQUIREMENTS OF A SPEEDY TRIAL GUARANTEED TO THE DEFENDANT. THE COURT FINDS THE SIMPLEST SOLUTION TO THIS CREATED CONFLICT IS TO APPOINT NEW COUNSEL FOR THE DEFENDANT. . . .

Journal Entry Substituting Attorney, State of Ohio v. Adam D. Boggess, 11CR000022 (Gallia Cty. Ct. of Common Pl., Aug. 9, 2011).

The removal of plaintiff from each of his felony criminal cases created other negative consequences for the plaintiff. Plaintiff argues that each of the other defendants should have protected him from Judge Evans's actions and their consequences, but they did not. Doc. 18 ¶ 31. "On September 7, 2011, without a hearing or other due process, Defendant [Criminal Defense Corporation] terminated Mr. Bright's employment as a public Defender because he could not practice before Judge Evans." Doc. 18 ¶ 32. Ultimately, once plaintiff was removed from the case, Judge Evans accepted the disputed plea from plaintiff's former client, Mr. Gleason. Doc. 18 ¶ 33.

**II.     Standard of Review**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly,

8

550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A district court

> faced with a complaint which it believes may be subject to dismissal must: (1) allow service of the complaint upon the defendant; (2) notify all parties of its intent to dismiss the complaint; (3) give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended sua sponte dismissal; (4) give the defendant a chance to respond or file an answer or motions; and (5) if the claim is dismissed, state its reasons for the dismissal.

Tingler v. Marshall, 716 F.2d 1109, 1112 (6th Cir. 1983).

### III. Analysis

Plaintiff brings two counts against defendant Criminal Defense Corporation: Count 1 alleging violations of 42 U.S.C. § 1983 and Count 4 for breach of contract. In response to the Court's order, plaintiff puts a fine point on the challenge faced by these claims:

> As explained in detail below, the rights at issue are Mr. Bright's right of free speech as an advocate for criminal defendants, his right to equal protection, and his right to due process in relation to his termination as a public defender by [the Criminal Defense Corporation]. Those rights were violated when [the Criminal Defense Corporation] took the path of least resistance and fired Mr. Bright *because he could not practice law before Judge Evans*.

Doc. 48 at 1 (emphasis added).

Plaintiff's complaint includes several allegations that are specific to the Criminal Defense Corporation. He alleges repeatedly that the reason for his termination by the Criminal Defense Corporation was because he could no longer perform his job after Judge Evans removed him from all of his felony criminal representations. See doc. 18 ¶¶ 1, 32. Plaintiff also alleges that the Corporation terminated him for a retaliatory purpose: "The Defendants singled out the Plaintiff in

retaliation for exercising his freedom of speech when they ended his career as a public defender in Gallia County, which would deter a lawyer of ordinary firmness from continuing to challenge Judge Evans on his courtroom policies." Doc. 18 ¶ 42.

Plaintiff also makes allegations related to the his claim that the Criminal Defense Corporation failed to intervene on his behalf or protect him from Judge Evans's actions. "At no time did the [Criminal Defense Corporation or other defendants] formally challenge the actions of Judge Evans terminating Plaintiff as a public defender . . . . At no time did [they] support Mr. Bright by, for example, requesting visiting judges or assigning Bright to misdemeanor cases where he would not be arguing in front of Judge Evans." Doc. 18 ¶ 31.

Finally, in support of his breach of contract claim, plaintiff alleges that the Criminal Defense Corporation "knowingly wrongfully terminated Mr. Bright's employment in violation of public policy that a public defender, once appointed, should not be intimidated, harassed, or face adverse employment action without good cause shown." Doc. 18 ¶ 39.

    a. 42 U.S.C. § 1983

        *i. Retaliation*

Where a plaintiff's 1983 claim rests on an allegation that the defendant retaliated against the plaintiff for exercising federal or constitutional rights, "plaintiff must plead factual allegations sufficient to establish that '(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.'" Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 539 (6th Cir. 2012) (quoting Fritz v. Charter Twp. Of Comstock, 592 F.3d 718, 723 (6th Cir. 2010)).

Plaintiff alleges that the Criminal Defense Corporation terminated him in retaliation for exercising "clearly established rights, privileges, and immunities secured by the First and Fourteenth Amendment to the United States Constitution including but not limited to the right to free speech, free association, substantive due process, procedural due process and equal protection under the law." Doc. 18 ¶ 47. In response to the Court's order of additional briefing, plaintiff limits his focus to four types of constitutional rights: The First Amendment right to speech, and the Fourteenth Amendment rights to equal protection, procedural due process, and substantive due process. See, doc. 48 at 3-11. The challenge faced by plaintiff's retaliation claims is that in the face of a very compelling rationale for the Criminal Defense Corporation's termination of plaintiff, "because he could not practice before Judge Evans," doc. 18 ¶ 32, plaintiff's allegations do not make it plausible that retaliation for the exercise of constitutional rights was also among the Criminal Defense Corporation's rationales in terminating plaintiff. Plaintiff presents one very compelling reason that the Criminal Defense Corporation terminated him–because he could no longer perform a major function of his job, representing indigent felony defendants in Gallia County, Ohio. Inability to perform the task assigned is a very strong reason for termination. Given that defendant Criminal Defense Corporation had a very good reason to terminate plaintiff, plaintiff faces a challenge in presenting allegations that would make it plausible that the corporation also had other impermissible and retaliatory motives. Here, all plaintiff presents is the bare allegation against all defendants that they "singled out the Plaintiff in retaliation for exercising his freedom of speech . . . ." Doc. 18 ¶ 42. This allegation alone, especially in the face of a very compelling reason for termination, is insufficient to make plaintiff's retaliation claim plausible. See, Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.").

Plaintiff's failure to make allegations that make it plausible that he was terminated in retaliation for exercising some right rather than because he could not perform major functions of his job is fatal to his First-Amendment retaliation claim. A First-Amendment retaliation claim requires "a causal connection" between "constitutionally protected speech or conduct" and the defendant's adverse action against the plaintiff. Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 399 (6th Cir. 2010). It is that causal connection that is missing here. Plaintiff was terminated because he could not perform his job, not because of constitutionally protected speech made when he did perform it.

### ii. Equal Protection

Plaintiff's equal protection "class of one" claim fails for similar reasons. Such a claim requires that the plaintiff allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. Of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). As discussed above, plaintiff's allegations make it clear that the Criminal Defense Corporation had a compelling reason to terminate the plaintiff, so plaintiff's allegations do not state a claim that his termination lacked a rational basis.

### iii. Procedural Due Process

Under the Due Process Clause, plaintiff claims a property interest in his continued employment, his ability to practice law before the Gallia County Court of Common Pleas, and his good reputation. As an initial matter, plaintiff has not alleged facts that would support his claim that the Criminal Defense Corporation took away his ability to practice law before the Gallia County Court of Common Pleas, nor is it apparent how the Corporation could possibly have done so. As

the Court has previously explained, the governance of the Ohio bar lies within the exclusive jurisdiction of the Supreme Court of Ohio. See State ex rel. Buck v. Maloney, 809 N.E.2d 20, 22 (Ohio 2004) ("Article IV of the Ohio Constitution grants this court general supervisory power over the courts of Ohio . . . .").

For the remaining property rights alleged by plaintiff in his procedural due process claims–in his job and his reputation–"[t]his court undertakes a two-step analysis . . . . The first step determines whether the palintiff has a property interest entitled to due process protection. Second, if the plaintiff has such a protected property interest, 'this court must then determine what process is due.'" Mitchell v. Fankhauser, 375 F.3d 477, 480 (6th Cir. 2004) (citations omitted, quoting Leary v. Daeschner, 228 F.3d 729, 741-42 (6th Cir. 2000)). "However, in order to prevail on a procedural due process challenge, [plaintiff] must also show prejudice. Indeed, we need not address the merits of a claim if there is no demonstration of prejudice. . . . Moreover, to establish the requisite prejudice, he must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." Graham v. Mukasey, 519 F.3d 546, 549-50 (6th Cir. 2008) (citing Warner v. Ashcroft, 381 F.3d 534, 539 & n. 1 (6th Cir. 2004) and Garza-Moreno v. Gonzales, 489 F.3d 239, 241-42 (6th Cir. 2007)). On this basis, plaintiff's procedural due process claims fail. Plaintiff has alleged that he could not practice law before Judge Evans, and that he was terminated for that reason. Had plaintiff received the hearing or other process that he may have been due, there is nothing that he could plausibly have said that would alter the fact that he was being terminated because he could no longer satisfy a major requirement of his job.

    *iv. Substantive Due Process*

Plaintiff's substantive due process claim fails for a similar reason.

> This court has "recognized that the Fourteenth Amendment has a substantive due process component that protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." Sutton v. Cleveland Bd. Of Educ., 958 F.2d 1339, 1350 (6th Cir. 1992) (quotation marks and citation omitted). "Absent the infringement of some fundamental right," however, this court has held that "the termination of public employment does not constitute a denial of substantive due process." Id. at 1351.

Young v. Township of Green Oak, 471 F.3d 674, 684 (6th Cir. 2006). Here, plaintiff claims that two such fundamental rights are at issue, his First Amendment speech right and a right against arbitrary denial of the pursuit of a career. Doc. 18 at 9. The Criminal Defense Corporation did not violate either right. As discussed above, *it* did not limit his speech or retaliate against him for exercising his speech rights. Nor did it arbitrarily terminate him. To the contrary, the plaintiff provides a logical reason for his termination–because he could not appear before Judge Evans.

    *v. Vicarious liability under § 1983*

  Finally, plaintiff has advanced a theory of vicarious liability, under which the Criminal Defense Corporation is allegedly liable for failing to protect him from Judge Evans's actions or to intervene on his behalf: "At no time did the [defendants] formally challenge the actions of Judge Evans terminating Plaintiff as a public defender with respect to the cases other than that of Mr. G even though these actions were clearly outside his jurisdiction as a common pleas judge." Doc. 18 ¶ 31. However, "under Section 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). To prove acquiescence, it is not enough to show that the actor merely failed to act against misconduct of which he was aware." Flagg v. City of Detroit, __ F.3d __, 2013 WL 1759895 at *6 (6th Cir. 2013). Here, plaintiff has only alleged that the Criminal

15

Defense Corporation failed to protect him from Judge Evans's actions. Even reading plaintiff's allegations in the most liberal light to allege cooperation or approval, without some supervisory relationship between the Criminal Defense Corporation and the judge–and there was none, plaintiff cannot state claim for vicarious liability. See Shehee, 199 F.3d at 300.

### b. Breach of Contract

Plaintiff's amended complaint also includes a claim that the Criminal Defense Corporation breached his employment contract by terminating him without good cause. It is far from clear that plaintiff had the right that he claims–not to be terminated other than for good cause. He bases this right on Ohio Rev. Code § 120.14(A):

> (1) Except as provided in division (A)(2) of this section, the county public defender commission shall appoint the county public defender and may remove him from office only for good cause.
> (2) If a county public defender commission contracts with the state public defender or with one or more nonprofit organization for the state public defender or the organizations to provide all of the services that the county public defender is required or permitted to provide by this chapter, the commission shall not appoint a county public defender.

Plaintiff was not a county public defender appointed by a county public defender commission under Section 120.14(A)(1). He was an attorney hired as public defender by the Criminal Defense Corporation, with which the Gallia County Public Defender Commission had contracted under Section 120.14(A)(2). Yet he claims he is entitled to the protections of (A)(1).

This appears to be a question of first impression under Ohio Law, and this Federal District Court need not decide it. Because this order dismisses all of plaintiff's federal claims against the Criminal Defense Corporation, the Court declines to exercise supplemental jurisdiction over the remaining state law claim against that defendant. See 28 U.S.C. 1367(c)(3).

**V.     Conclusion**

Based on the foregoing reasons, plaintiff's claims against the Criminal Defense Corporation arising under 42 U.S.C. § 1983 are DISMISSED with prejudice.  Plaintiffs state-law breach of contract claim is DISMISSED without prejudice.

IT IS SO ORDERED.

S/ James L  Graham<br>
James L. Graham<br>
UNITED STATES DISTRICT JUDGE

Date: June 3, 2013