# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  June 03, 2014

Mr. Daniel T. Downey
Weston Hurd
88 E. Broad Street, Suite 1750
Columbus, OH 43215-3506

Mr. Michael M. Hollingsworth
Shostak & Hollingsworth
Eight N. Court Street, Suite 502
Athens, OH 45701

Mr. George D. Jonson
Montgomery, Rennie & Jonson
36 E. Seventh Street, Suite 2100
Cincinnati, OH 45202

Ms. Stacy Virginia Pollock
Fishel Hass Kim Albrecht
400 S. Fifth Street, Suite 200
Columbus, OH 43215

Mr. Alphonse A. Gerhardstein
Ms. Jacklyn Gonzales Martin
Gerhardstein & Branch
432 Walnut Street, Suite 400
Cincinnati, OH 45202

Ms. Linda L. Woeber
Ms. Lisa M. Zaring
Montgomery, Rennie & Jonson
36 E. Seventh Street, Suite 2100
Cincinnati, OH 45202

     Re:    Case Nos. 13-3451/13-3907, *Robert Bright v. Gallia County, Ohio et al*
               Originating Case No. : 2:12-cv-00800

Dear Counsel,

    The court today announced its decision in the above-styled cases.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

               Yours very truly,

               Deborah S. Hunt, Clerk

               Cathryn Lovely
               Deputy Clerk

cc:  Mr. John P. Hehman

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0116p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

ROBERT W. BRIGHT,

                *Plaintiff-Appellee* (13-3451),

                *Plaintiff-Appellant* (13-3907),

v.

GALLIA COUNTY, OHIO; BOARD OF COMMISSIONERS OF GALLIA COUNTY, OHIO; GALLIA COUNTY PUBLIC DEFENDER COMMISSION; and GALLIA COUNTY CRIMINAL DEFENSE CORPORATION,

                *Defendants-Appellees* (13-3907),

DAVID DEAN EVANS,

                *Defendant-Appellant* (13-3451).

Nos. 13-3451/ 3907

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:12-cv-00800—James L. Graham, District Judge.

Argued:  March 12, 2014

Decided and Filed:  June 3, 2014

Before: MOORE, WHITE, and DONALD, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Linda L. Woeber, MONTGOMERY, RENNIE & JONSON, Cincinnati, Ohio, for Appellant in 13-3451.  Alphonse A. Gerhardstein, GERHARDSTEIN & BRANCH, CO. LPA, Cincinnati, Ohio, for Appellee in 13-3451 and Appellant in 13-3907.  Daniel T. Downey, FISHEL HASS KIM ALBRECT LLP, Columbus, Ohio, for Appellees in 13-3907.  **ON BRIEF:** George D. Jonson, Lisa M. Zaring, MONTGOMERY, RENNIE & JONSON, Cincinnati, Ohio, for Appellant in 13-3451.  Alphonse A. Gerhardstein, Jacklyn Gonzales Martin, GERHARDSTEIN & BRANCH, CO. LPA, Cincinnati, Ohio, for Appellee in 13-3451 and Appellant in 13-3907.  Daniel T. Downey, Stacy V. Pollock, FISHEL HASS KIM ALBRECT LLP, Columbus, Ohio, for Appellees in 13-3907.

---------------

**OPINION**

---------------

KAREN NELSON MOORE, Circuit Judge.  In this case, there is no debate that Judge David Dean Evans failed to meet the minimum expectations for members of the judiciary:  He overreacted to attorney Robert Bright's criticisms and inappropriately removed Bright from nearly seventy felony cases.  The judge's high-handed actions caused Bright great hardship, but litigation seeking to hold Judge Evans personally liable is not the solution.  Generally, we rely upon the judges further up the judicial hierarchy to review and correct the rulings of lower courts.  Only in a few circumstances do we allow lawsuits against individual judges to proceed, and for good reason.  The specter of facing a lawsuit naturally encourages overly timid judging and presents a direct threat to judicial independence.  While Judge Evans's conduct was worthy of censure, it does not fit within one of the exceptions to absolute judicial immunity; thus, we must REVERSE the district court's denial of immunity.

Unfortunately for Bright, our case law also requires us to side against him in his lawsuit against the Gallia County Board of Commissioners ("the Board"), the Gallia County Public Defender Commission ("the Commission"), and the Gallia County Criminal Defense Corporation ("the Corporation").  Under *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005), the First Amendment offers no protection to an attorney for his speech in court.  *Id.* at 716.  Without such protection, Bright cannot state a valid claim under 42 U.S.C. § 1983, and we must AFFIRM the district court's dismissal.

## I. BACKGROUND

Gallia County lies along the Ohio River in Southern Ohio, bordering West Virginia.  A board of commissioners governs the county and is responsible for providing indigent criminal defendants with legal representation.  To that end, the Board established the Commission pursuant to Ohio Revised Code § 120.13.  According to this statute, the Commission is to have five members—three chosen by the Board; two chosen by the county's Court of Common Pleas judge—and must either employ criminal-defense attorneys directly or hire outside counsel.  In

this case, the Commission contracted with the non-profit Corporation to hire and retain defense attorneys, who would represent indigent criminal defendants.

In 2011, the Corporation hired Bright to be one of these county public defenders at a rate of $5,600 per month.  R. 18 at 5 (Am. Compl. at ¶ 15) (Page ID #141).  As part of his duties, on July 25, 2011, Bright represented R.G. before Judge Evans, the county's only Court of Common Pleas judge.  Bright negotiated a plea agreement between the prosecutor and R.G., but R.G. hesitated to accept it during the plea colloquy.  According to Bright, R.G. was under the mistaken assumption that he could return home for a short period of time before leaving for prison.  R. 18-2 at 2 (Bright Mot.) (Page ID #154).  "Mere seconds" after refusing to accept the plea agreement, R.G. informed Bright and Judge Evans that he would take the deal after all.  *Id.* at 2–3 (Page ID #154–55).  Judge Evans refused, stating:  "'No, we're not going to play games.'"  *Id.* at 3 (Page ID #155).  Judge Evans then ordered trial to be scheduled.

On July 28, 2011, Bright and the prosecutor met with Judge Evans in his chambers in an attempt to convince the judge to accept R.G.'s plea.  Judge Evans refused.  On August 3, 2011, Bright filed a "Motion to Accept Plea" with the court.  R. 18 at 6 (Am. Compl. at ¶ 23) (Page ID #142).  In this motion, Bright stated that "[i]t is arbitrary and unreasonable for [Judge Evans] to refuse to [hold a hearing regarding whether to accept R.G.'s plea as voluntarily, knowingly, and intelligently made]."  R. 18-2 at 6 (Bright Mot.) (Page ID #158).  He criticized Judge Evans's "blanket policy of a 'drop dead date' concerning plea agreements" by which Judge Evans refused to accept a guilty plea from the defendant or a prosecutor's decision to drop charges once a certain date passed.  *Id.* at 8 (Page ID #160).  Bright called such a policy "an abuse of discretion because [Judge Evans's] position and attitude is unreasonable and/or arbitrary and/or unconscionable."  *Id.* at 9 (Page ID #161).  Bright also took issue with Judge Evans's failure to conduct a full colloquy with R.G. regarding his willingness to plead guilty, *id.* at 16 (Page ID #168), with Judge Evans's categorical refusal to accept "*Alford*/no contest pleas," *id.* at 16 n.5 (Page ID #168), and with Judge Evans's "'one strike and you're out' policy on community control violations," *id.* at 16–17 (Page ID #168–69).  Throughout the motion, Bright cited case law and made legal arguments.  His language was emphatic and forceful in many places (for

example, calling Judge Evans's actions "unconscionable"), but he used zero profanity and made no charges of ethical impropriety.

According to Bright, on August 5, 2011, "Judge Evans contacted the Office of Disciplinary Counsel of the Supreme Court of Ohio . . . and filed a grievance against . . . Bright on August 8, 2011." R. 18 at 6 (Am. Compl. at ¶ 24) (Page ID #142). Also on August 8, "Judge Evans filed a public journal entry in which he declared that . . . Bright's motion, although not rising to the level of misconduct or contempt, had created a conflict with the Court and ordered that . . . Bright be removed from the case of [R.G.]." *Id.* (Am. Compl. at ¶ 26) (Page ID #142). In his briefing on appeal, Bright claims that the entry stated:

> By such conduct [Bright] has created conflict with the Court whereby in this case or for that matter any other case in the future, when [Bright] does not agree with a decision or ruling by the Court, instead of being critical by accusation of being arbitrary, unreasonable, unconscionable or of abusing discretion, [Bright] simply may accuse the [C]ourt of being bias[ed] or prejudice[d] as it relates to him.  The Court must not only avoid any impropriety, bias or prejudice but must avoid any appearance of such.  The expressions and attitudes of Defense Counsel [Bright] as exhibited and announced in the instant motion toward this Court compromises the Court's ability to avoid any appearance of bias, prejudice, or to be fair and impartial as it relates to Defense Counsel [Bright] regardless [of] how hard it tries or what strides it makes toward guaranteeing that there would be no bias, prejudice and that it would be fair and impartial.

Bright Appellee Br. at 9 (emphasis deleted).

The next day, Judge Evans filed public journal entries in every other felony case that Bright had before Judge Evans and removed Bright from each of those cases, approximately seventy in total.  R. 18 at 6–7 (Am. Compl. at ¶ 27) (Page ID #142–43).  In its opinion denying Judge Evans absolute judicial immunity, the district court reproduced an example of these entries:

> Now comes the Court and orders that Michael L. Barr be substituted for counsel for the defendant.  Attorney Robert W. Bright is relieved of further obligation due to the conflict he has created with the Court and as described in the case of *State of Ohio v.* [*R.G.*], . . . to which reference is here made, and further due [to] the Courts's [sic] inquiry to the Office of Disciplinary Counsel, the Supreme Court of Ohio regarding Mr. Bright's conduct.  Further, the Court finds it is not feasible/practicable to request the Ohio Supreme Court to assign a visiting judge to each of the approximately fifty to seventy cases currently handled by Mr.

> Bright due to financial burden to Gallia County judicial economy, scheduling of the court, the constitutional rights of the defendant, and the constraints/requirements of a speedy trial guaranteed to the defendant. The Court finds the simplest solution to this created conflict is to appoint new counsel for the defendant . . . .

R. 43 at 7–8 (D. Ct. Op. Denying Immunity) (Page ID #410–411) (citation omitted; emphasis deleted). Bright alleges that he sent a letter to Judge Evans in an "attempt[] to amicably resolve the situation . . . ." R. 18 at 7 (Am. Compl. at ¶ 30) (Page ID #143). Judge Evans did not respond. *Id.*

On September 7, 2011, the Corporation "terminated . . . Bright's employment as a Public Defender because he could not practice before Judge Evans." *Id.* (Am. Compl. at ¶ 32) (Page ID #143). Bright alleges that the Corporation did so "without [holding] a hearing or [providing] other due process . . . ." *Id.*

On September 4, 2012, Bright filed suit in district court against Judge Evans, the Board, and the Corporation. On November 29, 2012, he amended his complaint to include the Commission. In the Amended Complaint, Bright alleged several causes of action. First, Bright claimed that the Board, the Commission, the Corporation, and Judge Evans violated his First and Fourteenth Amendment rights to free speech, to free association, to substantive due process, to procedural due process, and to equal protection. R. 18 at 9 (Am. Compl. at ¶ 47) (Page ID #145). These violations, he asserted, are cognizable under 42 U.S.C. § 1983. *Id.* Second, Bright alleged that Judge Evans tortiously interfered with Bright's contractual rights with the Corporation in violation of state common law. *Id.* at 10 (Am. Compl. at ¶¶ 48–49) (Page ID #146). Third, Bright averred that Judge Evans tortiously interfered with Bright's business relationship with the Corporation, also in violation of state common law. *Id.* (Am. Compl. at ¶¶ 50–51) (Page ID #146). Fourth, Bright claimed that the Corporation breached the contract between them by terminating Bright's employment "without good cause and in violation of public policy." *Id.* (Am. Compl. at ¶ 52) (Page ID #146). Fifth and finally, Bright alleged that Judge Evans invaded Bright's privacy by "publicly announc[ing]" that Judge Evans had filed a grievance with the Office of Disciplinary Counsel in approximately seventy public journal entries, a violation of the Ohio professional-responsibility rules and common law. *Id.* (Am. Compl. at ¶ 53) (Page ID #146).

On December 12, 2013, Judge Evans filed a motion to dismiss the Amended Complaint, arguing *inter alia* that the doctrine of absolute judicial immunity protects him from suits for monetary damages.  R. 21 at 7 (Evans Mot. to Dismiss) (Page ID #189).   The district court denied this motion on April 2, 2013.  R. 43 at 22 (D. Ct. Op. Denying Immunity) (Page ID #425).  The district court found that Judge Evans's decisions to remove Bright from felony cases pending before him were judicial actions.  *Id.* at 12 (Page ID #415).  However, the district court concluded that Judge Evans was "not entitled to absolute judicial immunity because his actions were completely outside of his jurisdiction."  *Id.* at 13 (Page ID #416); *see id.* at 22 (Page ID #425).  Judge Evans appeals this decision.  R. 46 at 1 (Evans Notice of Appeal) (Page ID #460).

The other defendants also filed motions to dismiss.  The Board and the Commission filed Rule 12(b)(6) motions, claiming that they were "too far removed from the alleged actions in the Amended Complaint to be found liable."  R. 20 at 7 (Bd. Mot. to Dismiss) (Page ID #179); R. 28 at 10 (Comm'n Mot. to Dismiss) (Page ID #270).  In addition, the Commission asserted that Bright failed to identify and then connect the Commission to a policy or custom to impose liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny.  R. 28 at 7–8 (Comm'n Mot. to Dismiss) (Page ID #267–68).  The district court concluded that Bright failed to plead sufficiently that the Board or the Commission retaliated against him for exercising his constitutional rights or that liability attaches to the Board or the Commission under the *Monell* doctrine.  *See* R. 53 at 4–6 (D. Ct. Order Granting Bd. & Comm'n Mot. to Dismiss) (Page ID #539–41).

The Corporation, taking a different line of attack, argued that the district court lacked subject-matter jurisdiction under *Parratt v. Taylor*, 451 U.S. 527 (1981), and asked the district court to dismiss Bright's suit pursuant to Federal Rule of Civil Procedure 12(b)(1).  R. 30 at 1 (Corp. Mot. to Dismiss) (Page ID #276).  The district court denied this motion and ordered supplemental briefing on whether Bright sufficiently pleaded that the Corporation deprived Bright of a federal right.  R. 44 at 6 (D. Ct. Rule 12(b)(1) Op.) (Page ID #453).  The parties complied, and in a subsequent order, the district court determined that Bright's pleadings were deficient and dismissed for failure to state a claim under Rule 12(b)(6).  R. 52 at 11–17 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #529–35).  The district court also declined to

exercise supplemental jurisdiction over Bright's state-law claim against the Corporation and dismissed it without prejudice. *Id.* at 16–17 (Page ID #534–35).

Bright requested that the district court certify the dismissals of the claims against the Board, the Commission, and the Corporation for immediate appeal under Rule 54(b), and the district court agreed to do so. R. 59 at 2 (D. Ct. Rule 54(b) Order) (Page ID #567). These appeals followed.

## II. JURISDICTION

The district court had jurisdiction to hear Bright's § 1983 claims under 28 U.S.C. § 1331 and to hear his state-common-law claims under 28 U.S.C. § 1367. We have jurisdiction to hear appeals of final judgments under 28 U.S.C. § 1291. Even though the denial of absolute judicial immunity is not a final judgment, it is immediately appealable under the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 528–29 (1985); *Brookings v. Clunk*, 389 F.3d 614, 616–17 (6th Cir. 2004). Furthermore, the district court, finding "no just reason to delay appellate review of [its] dismissal of the Board . . . , the . . . Commission, or the . . . Corporation," entered final judgment with respect to those entities under Federal Rule of Civil Procedure 54(b). R. 59 at 2 (D. Ct. Rule 54(b) Certification) (Page ID #567). This certification was proper, and therefore, we have jurisdiction to hear Bright's appeal of the Rule 12(b)(6) dismissals. *See Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 500 (6th Cir. 2012); *EJS Properties, LLC v. City of Toledo*, 689 F.3d 535, 537 (6th Cir. 2012).

## III. ABSOLUTE JUDICIAL IMMUNITY

Judge Evans moved to dismiss Bright's § 1983 suit against him on grounds of absolute judicial immunity from suit. The district court denied this request, a decision that was in error. Judge Evans's actions fell short of expectations, but they were actions judicial in nature and taken in cases over which he had jurisdiction. As a result, he is entitled to absolute judicial immunity. We **REVERSE** the district court's decision and **REMAND** with instructions to dismiss Bright's suit against Judge Evans.

## A.  Standard of Review

"We review the district court's denial of immunity *de novo* as it involves purely a legal question." *Archie v. Lanier*, 95 F.3d 438, 440 (6th Cir. 1996).  In determining whether Judge Evans qualifies for absolute judicial immunity at this stage in the litigation, we "'must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'"  *Barnes v. Winchell*, 105 F.3d 1111, 1114 (6th Cir. 1997) (quoting *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993)). Judge Evans, as "[t]he proponent of a claim to absolute immunity[,] bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S 429, 432 (1993); *see also Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000).

## B.  Legal Standard and Application

"It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages." *Barnes*, 105 F.3d at 1115 (citing, *inter alia*, *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1872)).  The passage of 42 U.S.C. § 1983 did nothing to change this ancient understanding.  *See Briscoe v. LaHue*, 460 U.S. 325, 334 (1983); *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Importantly, "[t]his immunity . . . is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson*, 386 U.S. at 554 (internal quotation marks omitted).  "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Forrester v. White*, 484 U.S. 219, 226–27 (1988) (citing *Forrester v. White*, 792 F.2d 647, 660–61 (7th Cir. 1986) (Posner, J., dissenting)).  "The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication." *Id.* at 227.  In general, litigants can protect themselves from judicial errors through the appellate process or other judicial proceedings without resort to suits for personal liability.  *See id.* at 226–27.

As a result of these strong policy justifications for the doctrine, absolute judicial immunity can be overcome only in two instances:  "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles*, 502 U.S. at 11–12 (internal citations omitted).  The parties focus upon the latter exception, given the district court's finding that Judge Evans lacked all jurisdiction to remove Bright from the nearly seventy felony cases before him.  *See* R. 43 at 12–13, 15 (D. Ct. Op. Denying Immunity) (Page ID #415–16, 418).

The Supreme Court has long recognized that jurisdiction is a tricky concept:  "Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised."  *Bradley*, 80 U.S. at 352.  Accordingly, "[t]he term 'jurisdiction' is to be broadly construed to effectuate the purposes of judicial immunity."  *Barnes*, 105 F.3d at 1122 (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).  The Supreme Court has also acknowledged that there is a difference "between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter."  *Bradley*, 80 U.S. at 351.  We have stated that "[o]nly in the absence of subject matter jurisdiction are judicial actors devoid of the shield of immunity."  *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc); *see also Barnes*, 105 F.3d at 1122 ("Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.").  And so, "[e]ven grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity."  *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001).

Under this standard, the district court erred in denying Judge Evans absolute judicial immunity.  Judge Evans's actions were petty, unethical, and unworthy of his office, *see Ohio State Bar Ass'n v. Evans*, 999 N.E.2d 674 (Ohio 2013) (sanctioning Judge Evans for his behavior toward Bright), but Judge Evans and the Court of Common Pleas had subject-matter jurisdiction over the underlying criminal proceedings, *see* Ohio Rev. Code § 2931.03.  As a result, we cannot say that Judge Evans acted "'clearly outside the subject matter of the court over which he

presides.'" *Brookings*, 389 F.3d at 623 (quoting *Johnson v. Turner*, 125 F.3d 324, 334 (6th Cir. 1997)).

This court's decision in *Stern* is helpful for understanding the scope of judicial immunity in cases such as this one. In that case, a Court of Common Pleas judge identified a potential conflict between the judge and one party's attorney in a case, and he asked both parties to brief the issue. *Stern*, 262 F.3d at 603. Instead of filing a brief, plaintiffs' counsel filed an "Affidavit of Disqualification" in the Ohio Supreme Court pursuant to Ohio Revised Code § 2701.03. *Id.* at 604. This provision immediately divests the state-court judge of "any authority to preside in the [case] until the [C]hief [J]ustice of the [Ohio] [S]upreme [C]ourt . . . rules on the affidavit . . . ." § 2701.03(D)(1). Angry at counsel for filing the affidavit, the judge ordered him into the courtroom and found him in contempt. *Stern*, 262 F.3d at 605. The Ohio Supreme Court held that this particular judge "'patently and unambiguously lack[ed] jurisdiction'" to make such a ruling. *Id.* at 609 (quoting *State ex rel. Stern v. Mascio*, 691 N.E.2d 253, 255 (Ohio 1998)) (alteration in original). Nonetheless, we distinguished between jurisdiction to proceed in the case and jurisdiction over the subject matter of the case. *See id*. Because the judge and the Court of Common Pleas retained subject-matter jurisdiction over the underlying proceeding under Ohio law, this court held that the judge still enjoyed absolute judicial immunity. *Id.* at 609–10, n.5.

Here, Judge Evans retained subject-matter jurisdiction over the criminal cases in which Bright had been appointed. Judge Evans's actions, however unprofessional and misguided, took place in the context of those prosecutions. Therefore, Judge Evans did not clearly lack all jurisdiction, and absolute judicial immunity shields him from suit.

The district court advanced several arguments to the contrary, and Bright continues and supplements those counterarguments on appeal. None of them are convincing. First, Bright maintains that Judge Evans acted without jurisdiction when he punished or disciplined Bright, a responsibility given exclusively to the Ohio Supreme Court. He has a point: the Ohio Constitution vests the Ohio Supreme Court with exclusive original jurisdiction over the regulation of the bar. *See* Ohio Const. art. IV, § 2(B)(1)(g); *Melling v. Stralka*, 465 N.E.2d 857, 859–60 (Ohio 1984). This fact distinguishes this case from *Bradley*, in which the Supreme Court

of the United States asserted that "[the] power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice." 80 U.S. at 354. The problem for Bright, however, is that Judge Evans—whether his actions constitute discipline or not—was not sitting without jurisdiction over a disciplinary hearing; rather, he took these actions while overseeing nearly seventy criminal prosecutions. Thus, under *Stern* and similar cases, he still had subject-matter jurisdiction over those proceedings in which his actions took place—a fact that preserves his absolute immunity—even if he clearly lacked jurisdiction to take such actions against Bright independent of the criminal prosecutions.

Second and similarly, Bright argues that Court of Common Pleas judges lack the authority to disqualify counsel from every case currently before their court and in the future. Again, this argument founders against *Stern*. In addition, though, it is not so clear that Bright is correct on the merits of his point. The Ohio Supreme Court has stated repeatedly that "[a] trial court has the 'inherent power to regulate the practice before it and protect the integrity of its proceedings . . .' including the 'authority and duty to see to the ethical conduct of attorneys . . . .'" *Mentor Lagoons, Inc. v. Rubin*, 510 N.E.2d 379, 382 (Ohio 1987) (quoting *Royal Indem. Co. v. J.C. Penney Co.*, 501 N.E.2d 617, 620 (Ohio 1986)) (ellipses in original). In response, Bright cites *State ex rel. Buck v. Maloney*, 809 N.E.2d 20 (Ohio 2004), and *State ex rel. Jones v. Stokes*, 551 N.E.2d 220 (Ohio Ct. App. 1989), for support and as evidence that Judge Evans's actions fell outside this inherent power. The state-court judges in those cases issued blanket bans against certain attorneys practicing before them at the time or in the future, and the Ohio courts declared these actions violated the Ohio Supreme Court's exclusive jurisdiction over attorney-disciplinary matters. *See Maloney*, 809 N.E.2d at 23; *Stokes*, 551 N.E.2d at 222.

These cases are distinguishable on several different grounds. One, the judges' actions in *Stokes* were divorced entirely from a particular proceeding. Here, Judge Evans acted only in current cases over which he was presiding. By acting only in current cases, Judge Evans was arguably availing himself of his inherent powers to regulate his courtroom. Two, *Maloney* and *Stokes* both involved prospective bans. Here, Judge Evans removed Bright only from pending cases over which he had jurisdiction. Admittedly, Judge Evans stated that a conflict existed between Bright and himself in *R.G.* "or for that matter any other case in the future." Bright

Appellee Br. at 9 (internal quotation marks omitted; emphasis deleted).  However, Judge Evans has not definitively banned Bright, as the attorneys in *Maloney* and *Stokes* certainly were. Without a definite statement or standing order, Judge Evans's actions fall short of the other judges' orders in the cases cited by Bright.  Thus, it is not clear that Judge Evans was usurping the exclusive jurisdiction of the Ohio Supreme Court.

Third, Bright argues that civil litigation is the only avenue through which he can combat Judge Evans's misconduct and, thus, that the district court correctly denied Judge Evans absolute immunity.  On this point, the cases that Bright cites in his own brief sow his argument's undoing. In *Stern*, the attorney who was eventually the subject of the judge's wrath filed an affidavit of disqualification with the Ohio Supreme Court, a motion that prevents a judge from acting in an attorney's case automatically.  262 F.3d at 604 (citing Ohio Rev. Code § 2701.03).  Such a filing, if it were made in this case, would have required the Ohio Supreme Court to answer whether Judge Evans was "bias[ed] or prejudice[d] for or against a party . . . *or a party's counsel* . . ." before Judge Evans could proceed in the cases once assigned to Bright.  § 2701.03(A) (emphasis added).  Bright, as he concedes, could also have filed for a writ of prohibition.  *See* Bright Appellee Br. at 15.  While this writ is extraordinary, the aggrieved attorneys in *Stern*, *Maloney*, and *Stokes* all followed this procedure and were successful.  According to the Supreme Court of the United States, these "mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability" are the correct way to combat judicial wrongdoing.  *Forrester*, 484 U.S. at 226–27.  While the harm to Bright has been great, there is no extraordinary reason to combat judicial misconduct through private litigation here.  And thus, there is no reason to deny absolute judicial immunity.

\*\*\*

While we ultimately conclude that Judge Evans is entitled to absolute judicial immunity, we cannot help but add our voices to the chorus of condemnation for his actions.  By operating in such an unreasonable manner, Judge Evans has brought dishonor on himself and his position. The Ohio Supreme Court properly sanctioned him for this behavior.  But we say again, absolute judicial immunity is not designed to protect individual bad actors; rather it is in place to protect judicial independence.  In our legal system, there is often someone who loses his money, his

liberty, or his life. This cannot be helped. But if that defeated party could turn around and file suit against the judge or judges in his case, then the whole system would unravel as the threat of suit crept into the judges' minds. This conclusion does little to help Bright, who was wronged by Judge Evans. It, however, preserves the independent judiciary. For the above reasons, we hold that Judge Evans is entitled to absolute judicial immunity.

## IV. CLAIMS AGAINST THE CORPORATION

Bright alleged two causes of action against the Corporation in the Amended Complaint: (1) that the Corporation, "under color of law, deprived [him] of clearly established rights, privileges, and immunities secured by the First and Fourteenth Amendment[s] to the United States Constitution including but not limited to the right to free speech, . . . substantive due process, procedural due process[,] and equal protection under the law"; and (2) that the Corporation "terminated its contract of employment with [him] without good cause and in violation of public policy." R. 18 at 9, 10 (Am. Compl. at ¶¶ 47, 52) (Page ID #145, 146). The district court dismissed Bright's federal claims in their entirety under Rule 12(b)(6). R. 52 at 17 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #535). Given that the breach-of-contract claim presented an issue of first impression under Ohio law, the district court declined to exercise supplemental jurisdiction over it and dismissed the claim without prejudice. *Id.* at 16 (Page ID #534). We **AFFIRM**, though partially on other grounds.

### A. Standard of Review

We review de novo the district court's dismissal of a claim pursuant to Rule 12(b)(6). *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013). "In reviewing a motion to dismiss, we must accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible claim for relief." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). "Further, we are not confined to the grounds relied on by the district court in affirming the court's dismissal; rather, we may affirm the district court's dismissal of [the plaintiff's] claims on any grounds . . . ." *Robert N. Clemens*

Nos. 13-3451/3907      *Bright v. Gallia Cnty., Ohio et al.*      Page 14

*Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007) (citing *Hoffman v. Comshare, Inc.* (*In re Comshare, Inc. Sec. Litig.*), 183 F.3d 542, 548–49 (6th Cir. 1999)).

## B. Section 1983 Claims

A plaintiff must make two showings to survive a motion to dismiss his § 1983 action: one, "a plaintiff must allege that a defendant acted under color of state law"; and two, "a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)). No party contends that state action is not present, so we turn to each claim to determine whether the Corporation deprived Bright of a right protected by federal law.

### 1. First Amendment Retaliation Claim

Bright first claims that the Corporation terminated its employment relationship with him in retaliation for Bright engaging in speech protected by the First Amendment. For a retaliation claim to survive a motion to dismiss, "[a] § 1983 plaintiff must plead factual allegations sufficient to establish that '(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Handy-Clay*, 695 F.3d at 539 (quoting *Fritz*, 592 F.3d at 723)). There can be little argument that losing one's employment for filing motions critical of a judge would deter an ordinary person from continuing to do so. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (en banc). Whether Bright satisfied the first and third requirements is a closer question, and we address them in reverse order.

### a. Causal Connection

The district court dismissed Bright's action against the Corporation after concluding that Bright failed to allege facts that would support the third, causal-connection prong. We disagree with this conclusion.

Determining whether a causal connection has been adequately alleged in the complaint requires a "two-part inquiry:  A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was 'motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'"  *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (quoting *Thaddeus-X*, 175 F.3d at 386).  Here, there is no debate that the Corporation caused Bright's employment to be terminated.  The question is whether Bright alleged facts "that would allow a jury to find that [the Corporation] was motivated at least in part by" Bright's speech.  *Paige v. Coyner*, 614 F.3d 273, 282 (6th Cir. 2010).[1]  In prior cases, we have found two factors to be especially helpful in determining whether motive existed:  (1) whether the defendant knew of the plaintiff's protected conduct; and (2) whether "the chronology of events supports an inference of causation," such as temporal proximity between the speech and the adverse action.  *Handy-Clay*, 695 F.3d at 545–46; *see also King*, 680 F.3d at 695; *Paige*, 614 F.3d at 282–83.

Clearly, Bright alleged that the Corporation knew of his conduct.  *See* R. 18 at 7, 8–9 (Am. Compl. at ¶¶ 32, 39, 42) (Page ID #143–145).  He also implicitly noted a short timespan between filing the motion and being terminated.  *See id.* at 6–7 (Am. Compl. at ¶¶ 23, 26, 32) (Page ID #142–43).  Whether these facts, along with Bright's bare allegation that "[the Corporation] singled out [Bright] in retaliation for exercising his freedom of speech," is enough to raise a plausible inference of motive is a close call.  *Id.* at 9 (Am. Compl. at ¶ 42) (Page ID #145).  The district court found that Bright's complaint provided "one very compelling rationale" for the Corporation's termination of Bright's employment: "'because he could not practice before Judge Evans.'"  R. 52 at 12 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #530) (quoting R. 18 at 7 (Am. Compl. at ¶ 32) (Page ID #143)).[2]  But the close temporal

---

[1]The burden of persuasion on this prong then shifts to the Corporation, and the Corporation "is of course free to rebut these allegations on summary judgment or at trial by establishing that [it] was motivated by any number of nonretaliatory goals."  *Paige*, 614 F.3d at 283; *see also Thaddeus-X*, 175 F.3d at 399 (recognizing burden-shifting obligation of plaintiff at summary-judgment stage).  When evaluating the sufficiency of a complaint, however, the district court should not be weighing the strength of competing inferences.  *See Paige*, 614 F.3d at 283.  In general, "[a] defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury."  *Id.* at 282 (citing *Harris v. Bornhorst*, 513 F.3d 503, 519–20 (6th Cir. 2008)).

[2]The district court read this statement as an admission by Bright that he was fired because he could not fulfill his duties, a nonretaliatory reason.  There is another possible inference, however, i.e., that the Corporation's proffered reason was mere pretext.  At the motion-to-dismiss stage, we must read Bright's Amended Complaint to state the latter.

proximity and the Corporation's knowledge of Bright's motion present another plausible reason for the Corporation's termination of Bright's employment, namely retaliation.  On the information presently before the court, the Corporation's proffered rationale does appear stronger, but the district court should not have been judging the relative strength of the competing inferences.  If we accept Bright's allegations as true and draw all inferences in his favor, we conclude that the Amended Complaint states enough facts to require the Corporation to present evidence at summary judgment to rebut the retaliatory inference.  Thus, the district court erred in dismissing Bright's First Amendment retaliation claim against the Corporation for failing to state a causal connection.

### b.  Protected Interest

Carrying the burden of persuasion on the causal-connection prong, by itself, is not enough to overcome a motion to dismiss.  The plaintiff must also show that the activity in which he engaged is protected by the First Amendment.  Problematically, the district court never addressed whether Bright's speech was protected.  If we were writing on a clean slate, we would be inclined to hold that Bright has also carried this burden, but *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005), a prior panel's published decision, compels us to affirm the dismissal of Bright's claim.

In *Mezibov*, the panel faced the question of "[w]hether an attorney can claim First Amendment protection on his own behalf for his filing motions and making courtroom statements on behalf of his client," *id.* at 717, and concluded that an attorney could not, *id.* at 720–21.  The attorney in that case "filed three motions seeking to dismiss the indictment and disqualify [the prosecutor] on the basis that he had engaged in improper conduct."  *Id.* at 715.  Here, Bright filed a motion with Judge Evans criticizing the judge's handling of proceedings before the court.  In both cases, the lawyer's arguments and motions contained core political speech, given that they involved criticism of government officials.  In both cases, the lawyers' speech came from inside the courtroom and in service of a client.  We see no valid distinction in fact or law between *Mezibov* and this case.  *Mezibov* is binding precedent in this circuit and can be overturned only by a decision of the en banc court or the United States Supreme Court. *Darrah v. City of Oak Park*, 255 F.3d 301, 309–10 (6th Cir. 2001).  Therefore, with great

reluctance, we hold that, at this time, *Mezibov* prevents us from recognizing Bright's filing of his motion or its contents as protected conduct. As a result, Bright's complaint is deficient, and the district court's dismissal of his claim is **AFFIRMED**.

***

Before turning to Bright's other claims, a few words on *Mezibov* and the law-of-the-circuit doctrine are appropriate. The panel's opinion in *Mezibov* deployed overly broad, general language and drew several controversial conclusions. For instance, the majority opined that "[t]he courtroom is a nonpublic forum where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir," 411 F.3d at 718, and that "an attorney's job in the courtroom, although it necessarily includes speech, is fundamentally inconsistent with the basic concept of 'free' speech," *id.* at 719. These statements and others drew an emphatic dissent, *see id.* at 723–26 (Moore, J., dissenting), and judges in subsequent cases have not been shy in expressing their displeasure with the decision, *see, e.g.*, *Lewter v. Kannensohn*, 159 F. App'x 641, 648 (6th Cir. 2005) (Keith, J., dissenting) (stating that *Mezibov*'s protected-interest holding was "an unwarranted extension of prior law"). Nevertheless, the majority's view carried the day and remains binding upon subsequent panels, under the law-of-the-circuit doctrine, until overturned by this court en banc or by the United States Supreme Court. *Darrah*, 255 F.3d at 309–10.

Whether we agree with the merits of these past decisions or not, it is essential that we hold true to this simple rule. For generations, the precedential system has been the best method of ensuring consistent application of the law even as this court predominantly renders decisions in three-judge panels. If a panel can discard prior decisions with which it disagrees, this system unravels; each panel becomes a court unto itself; and the parties will have no way of predicting the state of the law, their rights, or their obligations. There are times when the law-of-the-circuit doctrine does not apply, such as when the related law-of-the-case doctrine is relevant, but we would be foolish to diminish the doctrine or give panels the ability to override decisions of another panel with which they disagree.

### 2.  Equal Protection Claim

As for Bright's Equal Protection claim, he pleads himself out of court by citing the Corporation's proffered explanation for terminating his employment.  The Supreme Court has recognized that the Equal Protection Clause protects '"class[es] of one"' from irrational government action.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Under ordinary rational-basis review, however, there is no motive inquiry; a plaintiff has "the burden . . . to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  Here, Bright has not carried that burden because his suggestion that the Corporation fired him due to his inability to appear before Judge Evans and, thus, to meet the job's requirements, is a rational reason for the Corporation to terminate his employment.  Whether that reason was the actual motivation behind the Corporation's action is not relevant to traditional rational-basis review.  *See Heller v. Doe*, 509 U.S. 312, 319–20 (1993) (noting that a legislature can offer *post hoc* justifications for its actions).  By offering a rational justification for the Corporation's actions in his Amended Complaint, Bright has defeated his own Equal Protection claim.  Therefore, we **AFFIRM** the district court's dismissal of this claim.

### 3.  Procedural-Due-Process Claim

Bright next argues that the Corporation violated his procedural-due-process rights under the Fourteenth Amendment.  To survive a motion to dismiss this claim, Bright must allege facts showing (1) that he was deprived of a constitutionally recognized liberty or property interest; and (2) that he did not receive the required process.  *Leary v. Daeschner*, 228 F.3d 729, 741–42 (6th Cir. 2000) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 541 (1985)).  In his Amended Complaint, Bright alleged that the Corporation deprived him of three constitutionally recognized interests without any process:  (1) a property interest in his continued employment as a public defender; (2) a property interest in his right to practice law before the Court of Common Pleas; and (3) a liberty interest in his good reputation.  *See* R. 18 at 8–9 (Am. Compl. at ¶¶ 39, 43–47) (Page ID #144–45); *see also* Bright Appellant Br. at 15.  The district court found that

none of these interests were entitled to protection.   We agree and, therefore, **AFFIRM** the district court's decision.

### a. Property Interests

"Property interests . . . are not created by the Constitution.   Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."   *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

Bright first claimed that he has a property interest in continued employment as a public defender and cites Ohio Revised Code § 120.14 as the relevant source of law.[3]   *See* Bright Appellant Br. at 15.  Bright is mistaken.  Section 120.14(A)(1) states that "Except as provided in division (A)(2) of this section, the county public defender commission shall appoint the county public defender and may remove him from office only for good cause."   Subsection (A)(2) provides that "[i]f a county public defender commission contracts with . . . [a] nonprofit organization[] . . . to provide all of the services that the county public defender is required or permitted to provide by this chapter, . . . the commission shall not appoint a county public defender."  Because the Commission chose to contract with the Corporation, *see* R. 18-1 at 1–4 (Comm'n/Corp. Contract) (Page ID #149–152), § 120.14(A)(1) is not relevant.  *See also* R. 18-1 at 2 (Comm'n/Corp. Contract) (Page ID #150) ("[The Corporation] will utilize the service of attorneys as independent contractors.").   Section 120.14(F)(3) does state that "any nonprofit organization that contracts with a county public defender commission . . . shall . . . [c]omply with all statutory duties and other laws applicable to county public defenders."   But that directive suggests only that nonprofit organizations must fulfill the duties of the county public defender enumerated in § 120.15(B), which, importantly, does not mention standards for dismissal or contain a job-security provision.  Furthermore, § 120.14(A)(1) pertains to the duties and powers

---

[3]The district court rejected this argument on the grounds that Bright failed to plead that he had been prejudiced by a lack of process.  *See* R. 52 at 14 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #532) (citing *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008); *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241–42 (6th Cir. 2007)).  Both of these cases involved aliens being deported for immigration offenses, and the due-process considerations are different in that context than those at issue in this case.  Because we affirm the district court for a different reason, we express no views on whether these cases have any purchase here.

of the Commission, not the Corporation or a county public defender, and thus, it is not "applicable to" a county public defender. As a result, § 120.14 does not give Bright a property interest in his continued employment. His Amended Complaint offers no other source of law that establishes a property interest in his continued employment, and therefore, we **AFFIRM** the district court's decision to dismiss this claim.

Bright's second property-interest-based claim was that he has a "protected property interest in his right to practice law before the Gallia County Court of Common Pleas." Bright Appellant Br. at 16. The district court rejected this claim, finding that the Corporation could not deprive him of this right because only the Ohio Supreme Court has the power to restrict an attorney's ability to practice law. *See* R. 52 at 13–14 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #531–32). Whether the Corporation had the legal power to prevent Bright from practicing law is not the issue, however; the important questions are (1) whether Bright had a right to practice before the Court of Common Pleas in the first place, and (2) whether the Corporation actually prevented Bright from practicing in that court. Assuming that the answer to the first question is yes, the answer to the second one, at least according to Bright's Amended Complaint, is no. Bright alleged that the Corporation terminated his employment as a public defender. R. 18 at 8 (Am. Compl. at ¶ 39) (Page ID #144). But nowhere in the Amended Complaint does Bright plead facts suggesting that the Corporation took any other action to prevent Bright from working as an attorney before Judge Evans or another visiting judge in the Gallia County Court of Common Pleas. Absent such a statement, Bright has not adequately pleaded facts showing that the Corporation deprived him of a property interest, even assuming he has one in being an attorney appearing before the Court of Common Pleas in Gallia County. Thus, we **AFFIRM** the district court's dismissal of this second property-interest-based claim.

### b. Liberty Interest

Bright also alleged that he has a liberty interest in his reputation, which the Corporation purportedly damaged without affording him an opportunity to clear his name. The district court never specifically addressed this claim when dismissing Bright's claims against the Corporation in total. *See* R. 52 at 13–14 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #531–32) (dismissing Bright's procedural-due-process claims without addressing his liberty-interest

argument).  This oversight might be because Bright never alleged that the Corporation made any statement, let alone a public, defamatory one, regarding Bright and his termination.  Absent such an allegation, Bright has failed to state a valid claim.  *See Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (citing *Brown v. City of Niota*, 214 F.3d 722–23 (6th Cir. 2000)).  Thus, we **AFFIRM** the dismissal of this claim.

### 4.  Substantive-Due-Process Claim

Bright asserted two substantive-due-process claims:  that the Corporation infringed upon his fundamental rights to the freedom of speech and to the practice of law.  The district court succinctly stated that "[the] Corporation did not violate either right" and, thus, dismissed these claims.  R. 52 at 15 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #533).  For the following reasons, we **AFFIRM** these dismissals.

First, from his briefing, it appears that Bright is arguing that the Corporation's termination of Bright, or its acquiescence in Judge Evans's actions, represents a violation of Bright's fundamental right to criticize the government.  It is rather difficult to discern how these arguments differ from his retaliation claim discussed above and his vicarious-liability claim addressed below.  The cases that Bright cites in his briefing do not support a third, unaddressed claim, and to the extent that Bright argues that his position as an attorney affords him greater First Amendment rights, *Mezibov* holds the opposite.  *See* 411 F.3d at 719 ("[I]n finding no First Amendment rights on the part of the attorney participating in a judicial proceeding, we are simply re-affirming the commonsense principle that attorneys do not possess 'any right in the first amendment that is not the common legacy of every citizen.'"  (quoting *Ukrainian-American Bar Ass'n v. Baker*, 893 F.2d 1374, 1381 (D.C. Cir. 1990))).  Thus, we see no reason to hold that the district court erred in dismissing this part of Bright's substantive-due-process claim.

Bright's second substantive-due-process argument gets further, but the district court did not err in rejecting it either.  Bright claims that the Corporation violated his "substantive due process right to pursue his career as a public defender."  Bright Appellant Br. at 20.  In part, he is correct:  "This Court has long held that the freedom to choose and pursue a career, to engage in any of the common occupations of life, qualifies as a liberty interest which may not be arbitrarily denied by the State."  *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989) (internal quotation

marks omitted).  More specifically, the Supreme Court has stated that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause[s] of the Fourteenth Amendment." *Schware v. Board of Bar Exam. of N. Mex.*, 353 U.S. 232, 238–39 (1957) (citing *Dent v. West Virginia*, 129 U.S. 114 (1889)).  However, these two holdings do not mean that Bright has a substantive-due-process right to practice law as a Gallia County Public Defender.  The Corporation's decision to terminate Bright does not prevent him from practicing law in Gallia County or working as a defense attorney; it merely prevents him from doing so as an independent contractor for the Corporation.  Now, other legal provisions might render his termination a violation of the law, but the substantive aspect of the Due Process Clause is not one of them.  Thus, we **AFFIRM** the dismissal of this claim.

### 5.  Collusion with Judge Evans

Bright's final § 1983 claim is that the Corporation directly participated in Judge Evans's alleged violation of Bright's federal rights.  The district court rejected this claim, finding that the Corporation had no supervisory relationship over Judge Evans.  R. 52 at 16 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #534).  In doing so, the district court overstated the caselaw, given that a supervisory relationship is not always required to state a valid claim.  *See Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) ("[F]or constitutional violations under § 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself.").  Regardless, the bigger problem for Bright is that, under *Mezibov*, his motion and arguments to Judge Evans are not protected conduct.  Thus, there was no violation of federal rights for the Corporation to authorize, encourage, or approve.  As a result, Bright cannot state a valid claim, and we **AFFIRM** the district court's dismissal of this claim.

## C.  Breach-of-Contract Claim

Bright also asks us to order the district court to exercise supplemental jurisdiction over Bright's state-law breach-of-contract claim.  In the original proceedings, after dismissing all federal claims against the Corporation, the district court declined to exercise jurisdiction over

Bright's state-law claims because they presented "a question of first impression under Ohio Law
. . . ."  R. 52 at 16 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #534) (citing 28
U.S.C. § 1367(c)).  "We review a district court's refusal to exercise supplemental jurisdiction for
abuse of discretion."  *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (citing
*Hankins v. The Gap, Inc.*, 84 F.3d 797, 802 (6th Cir. 1996)).  In his briefing, Bright offers no
argument as to why the district court's refusal constitutes an abuse of discretion, and thus, we
**AFFIRM** the dismissal without prejudice of Bright's state-law claims against the Corporation.

### V.  CLAIMS AGAINST THE BOARD AND THE COMMISSION

In the Amended Complaint, Bright also alleged that the Board and the Commission,
"under color of law, deprived [him] of clearly established rights, privileges, and immunities
secured by the First and Fourteenth Amendment[s] to the United States Constitution . . . ."  R. 18
at 9 (Am. Compl. at ¶ 47) (Page ID #145).  Specifically, Bright claimed that the Board and the
Commission accomplished this deprivation by "knowingly failing to protect . . . Bright from the
clearly illegal actions by . . . [the Corporation] and Judge Evans . . . ."  *Id.* at 8 (Am. Compl. at
¶ 40) (Page ID #144).  The Board and the Commission, according to Bright, should have
"challenge[d] the actions of Judge Evans terminating [Bright] as a public defender" and should
have "support[ed] . . . Bright by, for example, requesting visiting judges or assigning Bright to
misdemeanor cases where he would not be arguing in front of Judge Evans."  *Id.* at 7 (Am.
Compl. at ¶ 31) (Page ID #143).  Bright alleged that, by not doing so, the Board and the
Commission "were irrational and wholly arbitrary" and "singled out [Bright] in retaliation for
exercising his freedom of speech."  *Id.* at 9 (Am. Compl. at ¶¶ 41, 42) (Page ID #145).

The district court rejected these arguments, finding that Bright had failed to plead
sufficient facts to state a claim for relief based on the Board's or the Commission's direct actions
against Bright.  R. 53 at 4 (D. Ct. Order Granting Bd. & Comm'n Mot. to Dismiss) (Page ID
#539).  Additionally, the district court found that Bright failed to state a sufficient claim that the
Board or Commission were liable under a *Monell* theory based on the actions of the Corporation
or Judge Evans.  For the reasons below, we **AFFIRM** the district court's dismissal.

## A. Direct Infringement

In the Amended Complaint, Bright's allegations that the Board and the Commission directly violated his federal rights were exceptionally thin. The district court dismissed them without much discussion because Bright did not aver sufficient facts that would support a finding that the Board or Commission took any direct action against Bright. On appeal, Bright appears to have abandoned this claim, having offered no argument in support of his original allegations. Thus, it is forfeited. *Patel v. Gonzales*, 470 F.3d 216, 219 (6th Cir. 2006).

## B. *Monell* Liability

In his briefing, Bright focuses on the district court's decision to dismiss his § 1983 claims attributing liability to the Board and the Commission for the actions of the Corporation and Judge Evans. In particular, the district court concluded that Bright failed to allege sufficient facts showing that the Corporation violated Bright's rights, as discussed above, or that either the Board or the Commission had a policy or custom that Judge Evans followed, which caused Bright's injuries. R. 53 at 6 (D. Ct. Order Granting Bd. & Comm'n Mot. to Dismiss) (Page ID #541). Based on the analysis above and Bright's Amended Complaint, we **AFFIRM** the dismissal of Bright's claims against the Board and the Commission.

"To establish municipal liability pursuant to § 1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation[] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Monell*, 436 U.S. at 690–91)) (alteration in original). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Accordingly, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

Nos. 13-3451/3907        *Bright v. Gallia Cnty., Ohio et al.*        Page 25

In this case, Bright pleaded that the Board and the Commission had a policy or custom of deferring to Judge Evans's decisions regarding the appointment of public defenders, and thus, because Judge Evans removed Bright from all cases pending before his court, the Corporation— the municipality's alleged policymaker—terminated Bright's employment. *See* R. 18 at 8 (Am. Compl. at ¶ 39) (Page ID #144). The problem is that Bright failed to plead sufficient facts that would support a finding that the Corporation violated federal law. Thus, it does not matter whether that action was taken pursuant to a policy or custom adopted by the Board or the Commission. Accordingly, we **AFFIRM** the dismissal of Bright's claims against the Board and the Commission.

## VI.  CONCLUSION

For the reasons stated above, in case number 13-3451, we **REVERSE** the district court's decision denying Judge Evans absolute judicial immunity and **REMAND** with instructions to dismiss the case against Judge Evans. In case number 13-3907, we **AFFIRM** the dismissal with prejudice of Bright's federal claims against the Board, the Commission, and the Corporation, and we **AFFIRM** the dismissal without prejudice of Bright's state-law claims against the Corporation.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 13-3451/3907

ROBERT W. BRIGHT,
                Plaintiff - Appellee (13-3451),
                Plaintiff - Appellant (13-3907),

     v.

GALLIA COUNTY, OHIO; BOARD OF COMMISSIONERS
OF GALLIA COUNTY, OHIO; GALLIA COUNTY PUBLIC
DEFENDER COMMISSION; and GALLIA COUNTY
CRIMINAL DEFENSE CORPORATION,
                Defendants - Appellees (13-3907),

DAVID DEAN EVANS,
                Defendant - Appellant (13-3451).

```
┌─────────────────────────────┐
│           FILED             │
│         Jun 03, 2014        │
│   DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

Before: MOORE, WHITE, and DONALD, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's denial of judicial immunity to Judge Evans is REVERSED and REMANDED to the district court with instructions to dismiss the case against Judge Evans.  IT IS FURTHER ORDERED that the district court's dismissal with prejudice of Bright's federal claims against the Board, the Commission, and the Corporation and its dismissal without prejudice of Bright's state-law claims against the Corporation are AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk